

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-9-2006

# USA v. Coles

Precedential or Non-Precedential: Precedential

Docket No. 04-2134

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Coles" (2006). *2006 Decisions.* Paper 1511.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1511

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-2134
_____

UNITED STATES OF AMERICA

v.

TERRANCE COLES

　　　　　　　　　　　　　　Appellant

_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 03-cr-00281-2
District Judge: Honorable Harvey Bartle, III


_____


Argued: November 7, 2005
_____


Before: ROTH, FUENTES, and GARTH, *Circuit Judges*

(Filed: February 9, 2006)

_____

OPINION OF THE COURT
_____


PATRICK L. MEEHAN, Esquire
United States Attorney
LAURIE MAGID, Esquire
Deputy United States Attorney
for Policy and Appeals
ROBERT A. ZAUZMER, Esquire
Assistant United States Attorney
Senior Appellate Counsel
MARTIN HARRELL, Esquire (Argued)
Special Assistant United States Attorney

Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

Attorneys for Appellee United States of America

JEFFREY M. LINDY, Esquire (Argued)
1800 John F. Kennedy Blvd., Suite 1500
Philadelphia, PA 19103

Attorney for Appellant Terrance Coles

GARTH, *Circuit Judge*.

Terrance Coles ("Coles") appeals his conviction and sentence for drug-related crimes, challenging, *inter alia*, the District Court's denial of his motion to suppress physical evidence. In that motion, Coles argued that the physical evidence must be suppressed under the Fourth Amendment because police officers had removed it from his hotel room without a search warrant. The District Court concluded that exigent circumstances – to wit, the imminent destruction of the evidence – justified the warrantless search. We cannot agree.

Concluding that the police impermissibly created the very exigency which they claim permitted the warrantless search, we hold that the exigent circumstances exception to the warrant requirement is not applicable here. Accordingly, we will reverse the District Court's denial of Coles's suppression motion, and we will vacate Coles's conviction and sentence and remand for further proceedings.

I.

A.

On June 7, 2002, Terrance Coles checked into room 511 at the Hawthorne Suites Hotel, 1100 Vine Street in Philadelphia. Coles initially checked into the hotel for the weekend, but subsequently arranged to stay for an additional 10 nights. After Coles had been there for about a week, the hotel manager, David Bradley ("Bradley"), sought unsuccessfully to locate Coles to discuss payment arrangements. On June 14, 2002, Bradley let

himself into Coles's room to see if the room was still occupied. Once inside the room, he observed a plastic bag and small vials containing a white substance. Suspecting that he had seen illegal drugs in the room, Bradley called Federal Bureau of Investigation ("FBI") Special Agent John Warrington, and described what he had seen.

Later that afternoon, when Agent Warrington and local narcotics officers met with Bradley at the hotel, Bradley repeated the information that he had provided earlier to the FBI on the telephone.[1] Bradley then unlocked room 511 for the officers. The officers entered the room and observed a plastic bag and small vials containing a white substance, as well as an empty holster. After a few minutes, the officers left the room, without touching anything. The government concedes that this entry was illegal and does not rely on anything seen on this visit in establishing probable cause for the subsequent warrantless

---

[1] The record is inconsistent as to the details of Bradley's initial observations inside room 511. Agent Warrington testified that "[u]pon entering the room, [Bradley] said he observed what he thought was drugs and, you know, things of - - items related to drugs and what he thought was a holster." But Agent Warrington did "not recall exactly what he said to me, in terms of the items." Officer Barry Wilson testified that Bradley reported seeing "something suspicious that appeared to be narcotics," specifically "[a] plastic bag with something white inside and also some vials with something white inside." Bradley later testified at trial that he could not remember what he had seen in room 511, but that "it appeared to me to be, you know, paraphernalia, if you would."

entry and search.

Bradley next provided the officers with access to room 514, located directly across the hall from room 511, where the officers established surveillance by using the peephole in the door. At some point, Sgt. Jonathan Josey, the supervising officer, sent Officer Barry Wilson to check additional records on Terrance Coles and perhaps to secure a search and seizure warrant.[2] As Officer Wilson approached the elevator to leave the fifth floor, he noticed two men exiting the elevator, at least one of whom carried a black nylon backpack. After Officer Wilson watched the two men enter room 511, he returned to room 514 to inform the officers positioned there that two men had just entered room 511. There is no indication that either of the two men, later identified as Coles and co-defendant Jonathan Jackson, were aware of the police surveillance, either then or at any time thereafter.

Despite having the room under covert surveillance, the officers decided to enter room 511. Sgt. Josey, Officer Wilson and two other officers, all dressed in plain clothes with identification badges hanging around their necks, positioned themselves in two parallel columns outside the entrance to room 511. Sgt. Josey knocked on the door, attempting to gain access

_____

[2] During the suppression hearing, neither Agent Warrington nor Officer Wilson mentioned that Officer Wilson left to secure a warrant. Sgt. Josey testified at trial, however, that "[t]he initial plan was to stand by and monitor the room for any activity, while Police Officer Wilson went back to our headquarters and secured a search and seizure warrant."

by a subterfuge. He first announced "room service" in an attempt to get the two men to open the door. A man replied that he had not ordered anything and refused to open the door. (Co-defendant Jackson later testified that the man answering was Coles). Sgt. Josey knocked a second time, this time announcing that he was from maintenance to fix a reported leak. A voice again responded, saying there was no leak and again refused to open the door. Sgt. Josey knocked a third time, more forcefully, identifying himself as a police officer and telling the occupants to "open the door, this is the police."

At this critical juncture, the officers heard the sounds of rustling and running footsteps.[3] Sgt. Josey attempted to open the door using an electronic passkey provided by Bradley, but the officers could not enter because there was a bar latch over the door. After partially opening the door with the passkey, the officers heard the sound of a toilet flushing and the sounds of more running.[4]

_____

[3] The accounts of the participating officers differ here. Agent Warrington, who remained behind the door in room 514, heard "[l]oud banging, intermittent pounding and scuffling." Officer Wilson heard "what sounded to be rustling about, somebody running back and forth." Sgt. Josey (who testified at trial) heard "what appeared to be footsteps going away from the door."

[4] The District Court found that the officers "heard the sounds of rustling, running footsteps and *a flushing toilet*" before attempting to open the door. (emphasis added). This is

Coles eventually opened the door for the officers. Upon entering the room, the police discovered, among other things, several containers of cocaine base "crack," multiple bags containing cocaine, 25 vials of "crack" cocaine, approximately $2,000 in cash, and a firearm inside of Coles's open carrying bag. The street value of the confiscated drugs was $31,000. Coles and Jackson were then arrested.

After securing the room, the police obtained and executed search warrants in order to search the room further and to search Coles's rental car. The application for the search warrants made no mention of the first illegal entry into room 511. No additional evidence or contraband was discovered after the warrants had been secured.

### B.

Coles was indicted on April 29, 2003 by a grand jury sitting in the Eastern District of Pennsylvania. The indictment charged Coles with possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c) (Count 1), and possession with intent to distribute cocaine base (crack) and cocaine, in violation of 21 U.S.C. § 841(a)(1) (Counts 2 and 3).[5]

---

not consistent with the record. According to the officers' accounts, they heard the sound of a toilet flushing only after attempting to gain entry by using the passkey.

[5] The indictment also charged co-defendant Jonathan Jackson with a fourth count – possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 4).

On August 6, 2003, Coles filed a pre-trial motion to suppress the evidence seized from his hotel room, claiming violations of his Fourth Amendment rights. The District Court conducted an evidentiary hearing on Coles's suppression motion on or around October 15, 2003, at which Agent Warrington and Officer Wilson testified for the government. Coles argued that based on the information provided by the hotel manager, the police lacked probable cause to enter the room. He argued, in the alternative, that probable cause or not, the warrantless entry into the hotel room could not be justified under the exigent circumstances exception because the officers had created those circumstances in attempting to gain access to the room.

The District Court denied the suppression motion the next day. The District Court found that the police had probable cause based on their initial conversation with Bradley at the hotel, and that, in any event, the police gained additional information to support probable cause after they had knocked on the door to room 511 and announced their presence – to wit, the rustling, running footsteps and flushing toilet. The District Court also found that the likelihood of imminent destruction of evidence created exigent circumstances, thus justifying the warrantless entry and search. However, the District Court made no explicit finding as to whether the police created those exigent circumstances.

_____

Jackson pled guilty to Counts 2 and 3 on October 26, 2003, and was sentenced to 9 years imprisonment on January 9, 2004. Counts 1 and 4 were dismissed as to Jackson after his sentencing.

The case proceeded to trial, and Coles was subsequently convicted by a jury of all three counts of the indictment.[6] The District Court sentenced Coles to 138 months of incarceration on or around April 14, 2004. Coles thereupon filed the instant appeal, seeking, *inter alia*, our review of the District Court's denial of his suppression motion.[7]

## II.

The District Court had subject matter jurisdiction over this federal criminal action pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction to review the judgment of conviction pursuant to 28 U.S.C. § 1291 and the final sentence pursuant to

---

[6] Coles also moved for reconsideration of the denial of his motion to suppress. The District Court denied that motion on October 24, 2003.

[7] In addition to the suppression issue, Coles raises two other issues on appeal. First, he argues that the District Court erred in denying his motion for judgment of acquittal on Count 1 – possession of a firearm in furtherance of drug trafficking. Coles submits that the evidence failed to establish the requisite connection between the firearm and the drug offense to sustain a conviction as to that count. Second, he challenges his sentence on *Blakely/Booker* grounds, arguing that the District Court engaged in impermissible fact-finding during the sentencing phase. Because we will reverse the District Court on the suppression issue, we do not reach the remaining issues raised by Coles's appeal.

18 U.S.C. § 3742. We review the denial of a suppression motion for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the district court's properly found facts. *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003).

## III.

### A.

We begin our discussion with the relevant constitutional text. The Fourth Amendment to the federal Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend IV. It protects people in their homes from unreasonable searches and seizures by permitting only a neutral and detached magistrate to review evidence and draw inferences to support the issuance of a search warrant. *Johnson v. United States*, 333 U.S. 10, 13-14 (1948). This Fourth Amendment protection extends to guests staying in hotel rooms. *Stoner v. State of Cal.*, 376 U.S. 483, 490 (1964) ("No less than a tenant

of a house . . . a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures.") (internal citations omitted).

Warrantless searches and seizures inside someone's home (or in this case, a hotel room) are presumptively unreasonable unless the occupants consent or probable cause *and* exigent circumstances exist to justify the intrusion. *Steagald v. United States*, 451 U.S. 204, 211 (1981); *Payton v. New York*, 445 U.S. 573, 586 (1980); *see also United States v. Rubin*, 474 F.2d 262, 268 (3d Cir. 1973) ("Probable cause to believe contraband is present is necessary to justify a warrantless search, but it alone is not sufficient . . . Mere probable cause does not provide the exigent circumstances necessary to justify a search without a warrant."). Consent is not at issue in this appeal, and Coles does not challenge the District Court's finding of probable cause. This appeal thus requires us to reexamine the exigent circumstances exception to the warrant requirement.

Examples of exigent circumstances include, but are not limited to, hot pursuit of a suspected felon, the possibility that evidence may be removed or destroyed, and danger to the lives of officers or others. *U.S. v. Richard*, 994 F.2d 244, 247-48 (5th Cir. 1993); *see also Rubin*, 474 F.2d at 268-69. In these limited situations,[8] the need for effective law enforcement trumps the

_____

[8] The Supreme Court has "emphasized that exceptions to the warrant requirement are 'few in number and carefully delineated,' . . . and that the police bear a heavy burden when attempting to demonstrate an urgent need that might justify

right of privacy and the requirement of a search warrant, thereby excusing an otherwise unconstitutional intrusion. *Warden v. Hayden*, 387 U.S. 294, 298-99 (1967). Exigent circumstances, however, do not meet Fourth Amendment standards if the government deliberately creates them. *United States v. Acosta*, 965 F.2d 1248, 1254 (3d Cir. 1992); *United States v. Duchi*, 906 F.2d 1278, 1284-85 (8th Cir. 1990); *United States v. Timberlake*, 896 F.2d 592, 597 (D.C. Cir. 1990); *United States v. Thompson*, 700 F.2d 944, 950 (5th Cir. 1983).

The presence of exigent circumstances is a finding of fact, which we review for clear error. *Richard*, 994 F.2d at 248. The District Court found that exigent circumstances – the possibility of evidence being destroyed – existed *after* the officers knocked on the hotel room door and demanded entry. Coles does not challenge that finding on appeal. He asks us to review only the second prong or requirement of the exigency exception to the warrant requirement – *i.e.*, whether the police improperly created the exigency.[9] Our attention is thus focused

warrantless searches . . . ." *Welsh v. Wisconsin,* 466 U.S. 740, 749-50 (1984) (quoting *United States v. United States District Court*, 407 U.S. 297, 318 (1971)).

[9] As we have stated, the District Court never made an *explicit* finding as to whether the police impermissibly created the exigency. Remand for further findings of fact and conclusions of law is nevertheless unnecessary, inasmuch as a finding that the police did not create the exigency is evidently implicit in the District Court's conclusion that exigent circumstances justified the warrantless search.

upon this second prong for the remainder of our discussion.

B.

We turn at the outset to *Johnson v. United States*, *supra*. There, the Supreme Court considered the Fourth Amendment implications of a warrantless search on a very similar set of facts to those presented here. In *Johnson*, the police obtained information from an informant that persons were smoking opium in the Europe Hotel. When the officers went to the hotel to investigate, they immediately recognized the smell of opium, and then traced the odor to Room 1. The officers did not know who occupied the room, and so they knocked and announced themselves. After a slight delay, there was "some shuffling or noise" in the room and then the defendant opened the door. The lead officer told the defendant that "I want to talk to you a little bit," and the defendant "stepped back acquiescently and admitted [the officers]." 333 U.S. at 12. The officers proceeded to search the room, uncovering incriminating evidence of drugs and smoking apparatus.

The Supreme Court found that the search violated the Fourth Amendment. The government had offered no reason "for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate." *Id.* at 15. The Court noted that the following factors were relevant to its determination: (1) no suspect had been fleeing or likely to take flight; (2) the search was of a hotel room [permanent premises], not of a movable vehicle; and (3) no evidence was threatened with removal or destruction. *Id.* Finally, the Court observed

-13-

that "[i]f the officers in this case were excused from the constitutional duty of presenting their evidence to a magistrate, it is difficult to think of a case in which it should be required." *Id.*

Notwithstanding the striking similarity between *Johnson* and the present case, the government attempts to distinguish *Johnson*, arguing that "in that case, the Supreme Court did not rule that officers impermissibly created exigent circumstances; instead, it noted that the government had not established an exigency." Appellee's Br. at 32 n.7. Under a fair reading of *Johnson* as applied here, however, the police in the instant case had no justification for knocking and demanding entry to Coles's hotel room *before first securing a warrant*.

In this case, as in *Johnson*, no suspect was fleeing and the search was of permanent premises, *i.e.*, Coles's hotel room. More importantly, prior to the police announcing themselves at the hotel room door, police surveillance had not been detected by Coles and no evidence was being destroyed at that point. Whatever exigencies might have arisen after the police announced their presence at the door cannot excuse their failure to first obtain a search warrant. Indeed, this case constitutes an *a fortiori* application of *Johnson* inasmuch as the police here attempted to gain access by subterfuge.[10]

---

[10] The police officers first asserted "room service" in an effort to get the occupants of room 511 to open the door. Because this ploy was unsuccessful, they then asserted "maintenance," which was also unsuccessful. It was only then that they announced themselves as police officers.

-14-

While *Johnson* casts serious constitutional doubt upon the warrantless entry of Coles's hotel room, we do not conclude our discussion with that decision. Leaving aside the factual similarities between *Johnson* and the instant appeal, we read *Johnson* as focusing the Fourth Amendment inquiry upon the reasonableness and propriety of the actions taken by the police *preceding* the warrantless search. That inquiry is also essential in the police created-exigency context.

C.

The Fifth Circuit, which appears to have taken the lead in this area, generally requires exigent circumstances to exist *before* the police decide to knock and announce themselves at the door. In this respect, *United States v. Richards*, *supra*, is instructive. In that case, officers approached a motel room looking for a man suspected of drug trafficking. After the officers knocked on the door and announced their presence, they heard people talking softly and drawers slamming. Fearing that they were in danger and that evidence was being destroyed, the officers entered the room without a warrant.

The Fifth Circuit affirmed the district court's finding that the officers created the exigent circumstances by their own actions – *i.e.*, by announcing their presence when they could have easily waited for and obtained a search warrant. In reaching that conclusion, the court "distinguish[ed] between cases where exigent circumstances arise naturally during a delay in obtaining a warrant and those where officers have deliberately created the exigent circumstances." 994 F.2d at 248 (citations omitted). The court emphasized that exigent circumstances did

not arise until the agents announced themselves at the door. By that time, the agents had successfully and covertly secured the room, thus allowing them to maintain their surveillance pending the issuance of a warrant. *Id.* at 249.

As *Richards* makes clear, the Fifth Circuit, in assessing whether police impermissibly create exigent circumstances, focuses on the reasonableness and propriety of the officers' actions and investigative tactics leading up to the warrantless entry. *See U.S. v. Gould*, 364 F.3d 578, 590 (5th Cir. 2004); *U.S. v. Rico*, 51 F.3d 495, 502 (5th Cir. 1995).[11] Exigent circumstances will not provide an exception to the warrant requirement where those actions are found to be unreasonable. *Compare United States v. Munoz-Guerra*, 788 F.2d 295, 298 (5th Cir. 1986) with *United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001).[12]

---

[11] The Fifth Circuit employs two levels of inquiry: "first whether the officers deliberately created the exigent circumstances with the bad faith intent to avoid the warrant requirement, and second, even if they did not do so in bad faith, whether their actions creating the exigency were sufficiently unreasonable or improper as to preclude dispensation with the warrant requirement." *Gould*, 364 F.3d at 590.

[12] In *Munoz-Guerra*, officers responded to anonymous tips of drug activity by establishing surveillance around a residence. After noticing some suspicious activity, the officers walked along the side of the residence and noticed marijuana in plain view through a window. Thereupon, the officers knocked on the patio door, and one of the occupants motioned through

-16-

Other courts of appeals have followed the Fifth Circuit's lead. They also look to the reasonableness and propriety of the actions and investigative tactics of the police which precede the exigency relied upon to justify warrantless entry. *See, e.g., United States v. Chambers*, 395 F.3d 563, 566 (6th Cir. 2005) (noting that the exigent circumstances exception cannot be met "if the police controlled the timing of the encounter giving rise to the search" and requiring "*some showing* of deliberate conduct on the part of the police evincing an effort intentionally

---

the door that he needed to get a key. Fearing that he was in fact going to retrieve a weapon, the officers broke through the door and arrested the occupants.

The Fifth Circuit rejected the agents' approach to the patio door as unreasonable. The court noted that it was possible to secure the residence covertly from the outside, and that the officers knew that their putative "knock and talk" investigative strategy would require a warrantless entry. 788 F.2d at 298.

In *Jones*, by contrast, officers approached an apartment to investigate complaints of criminal activity and to identify the occupants. The officers observed a firearm in plain view through an open apartment door, which compelled them to enter the apartment without a warrant.

The *Jones* court held that exigent circumstances justified the warrantless entry. It noted that the "knock and talk" procedure was a reasonable investigative tactic under the circumstances, inasmuch as the police did not observe any criminal activity before approaching the apartment and did not know that the occupants of the apartment were armed until they were directly in front of the open apartment door. 239 F.3d at 721-22.

to evade the warrant requirement") (citation omitted); *United States v. Duchi*, 906 F.2d 1278, 1284 (8th Cir. 1990) (adopting antecedent inquiry into tactics leading up to exigency).

As compared to the decisions in those courts, however, the Second Circuit construes the exigency doctrine more broadly. The Second Circuit provides greater latitude to law enforcement officers in disregarding the warrant requirement. *See United States v. MacDonald*, 916 F.2d 766 (2d Cir. 1990) (en banc). *MacDonald* announced the following principle to govern determinations about whether the police impermissibly create exigent circumstances: "when law enforcement agents act in an entirely lawful manner, they do not impermissibly create exigent circumstances." *MacDonald*, 916 F.2d at 772. The government here relies heavily on *MacDonald* to support its position that the warrantless search of Coles's hotel room passes constitutional muster.

In *MacDonald*, an undercover officer had entered an apartment and bought drugs. The officer then immediately left the building and reported his observations to other task force members waiting outside. Approximately ten minutes after the controlled purchase, the undercover officer returned to the apartment with reinforcements. They knocked and announced their presence. Agents watching the rear of the apartment radioed to the agents stationed in the front that the occupants were trying to escape through the back door. The agents at the apartment door then used a battering ram to force entry.

The Second Circuit found that the agents' conduct did not impermissibly create the exigent circumstances to circumvent

the warrant requirement. *Id.* at 771. The court noted that the agents acted properly in knocking on the door and announcing themselves.

Contrary to the Fifth Circuit, the reasonableness of the police investigative tactics precipitating the exigency does not seem to figure into the Second Circuit's analysis. In *MacDonald*, as in *Richard*, the police created the exigency by announcing their presence under circumstances that were likely to lead to a warrantless search. We find it hard to reconcile *MacDonald* with *Richard*. It suggests to us that the Second and Fifth Circuits have adopted different inquiries for purposes of deciding whether police impermissibly create exigent circumstances.

Although *MacDonald* is an *en banc* opinion of the Second Circuit, we are hard-pressed to agree with the majority opinion. We find the dissent in *MacDonald* much more attuned to the governing principles of the exigency exception because the dissent concentrates on the reasonableness of the actions and investigative tactics of the police which precede their warrantless entry. As the *MacDonald* dissent noted, "it [is] difficult to conceive of the officers' return to the apartment [10 minutes after their purchase of drugs] as anything other than pretext, in an effort to precipitate a crisis that did not then exist." *Id.* at 776 (Kearse, J., dissenting). The *MacDonald* dissent further noted that the agents arrived at the door with a battering ram, "plainly anticipat[ing] that the announcement of their identity would precipitate an exigency." *Id.* Judge Kearse in dissent thus concluded that "[w]e should not endorse such contrivances by law enforcement officials in their efforts to

circumvent the Fourth Amendment's warrant requirement." *Id.*[13]

Like our sister courts of appeals to which we have referred and like the dissent in *MacDonald*, we are guided by the principle that in order to determine whether the police impermissibly manufacture or create exigent circumstances, we must look to the reasonableness and propriety of their actions and investigative tactics *preceding* their warrantless entry. Mindful of that principle, we now examine the District Court's finding of exigent circumstances.

D.

Our analysis here is particularly informed by three

---

[13] We have, as the government points out, cited to *MacDonald* in *United States v. Acosta*, 965 F.2d 1248 (3d Cir. 1992). *Acosta*, however, is readily distinguishable from this case. First, the "Coles" officers here did not possess an arrest warrant, as they did in *Acosta*. Second, the officers here did not speak truthfully in identifying themselves at the door, as this court found that they had in *Acosta*. Third, the officers here had been inside of room 511, thus learning of the illegal drugs in the room. And fourth, the officers here had every intent to enter room 511 without a warrant. In short, it is clear that the officers in this case engaged in pretextual conduct in order to gain access to Coles's hotel room. The government's reliance on *Acosta* is therefore misplaced.

overarching factors: (1) the existence of probable cause; (2) the initial decision to gain entry by subterfuge; and (3) the covert and undetected surveillance. We address each of these factors below.

In *Johnson*, which we discussed earlier, the Supreme Court emphasized that "[a]t the time entry was demanded the officers were possessed of evidence which a magistrate might have found to be probable cause for issuing a search warrant." 333 U.S. at 13. In this case, too, the police possessed probable cause based on the initial observations of Bradley, the hotel manager. Based on this evidence, the police could have obtained a search warrant for Coles's hotel room.

Contrary to the government's characterization, this case does not present the situation where the police reasonably attempted to utilize the "knock and talk" investigative tactic. Having knowledge of criminal activity inside room 511, both from Bradley's observations and from their own earlier observations, the police had no legitimate reason to utilize the "knock and talk" procedure. *Compare Jones*, 239 F.3d at 721 ("Because the officers were not convinced that criminal activity was taking place and did not have any reason to believe that the occupants were armed, the "knock and talk" procedure was a reasonable investigative tactic under the circumstances."). In any case, in identifying themselves as hotel personnel providing "room service" or "maintenance," the police resorted to subterfuge, clearly manifesting their intention to mislead the occupants into believing that they were not police officers. At the very least, the actions of the officers at this time demonstrated that the police had no intention of merely

-21-

investigating matters further or perhaps obtaining consent to search.[14]

As the record plainly indicates, the officers decided to enter room 511 without a warrant. It was that decision to conduct a warrantless entry and search of the room, without any urgent need to do so, that impermissibly created the very exigency relied upon by the government in this case. *See United States v. Timberlake*, 896 F.2d 592, 597 (D.C. Cir. 1990) (holding that police created exigent circumstances where "[t]he record contains no evidence that the police, when they knocked on the door, intended anything other than a warrantless search of the apartment").

Nor is this a case where Coles had detected the law enforcement surveillance, thereby creating an urgent need for the officers to bypass the warrant requirement. *See Jones*, 239 F.3d at 721 ("[The Fifth Circuit] has limited the exigent circumstances exception to situations when a suspect detects law enforcement surveillance rather than when officers make their presence known."). There is no indication in the record that Coles was aware of the surveillance prior to the officers' decision to gain entry. *Compare United States v. Marshall*, 157 F.3d 477, 482 (7th Cir. 1998) (holding that the warrantless entry into the suspect's home was justified because the officers reasonably believed the occupant was aware of their presence

---

[14] Under these circumstances, the government's assertion that the police knocked on the hotel room door to "seek information" or "to ask for consent to search," Appellee's Br. at 25, cannot be taken seriously.

and was preparing to destroy evidence); *U.S. v. Rodea*, 102 F.3d 1401, 1408 (5th Cir. 1996) (defendant's detection of police officer conducting surveillance outside of mobile home where marijuana had been delivered created exigent circumstances justifying warrantless search).  Consequently, the police here could have maintained their surveillance until a search warrant had been secured.[15]

We emphasize that the record reveals no urgency or need for the officers to take immediate action, prior to the officers' decision to knock on Coles's hotel room door and demand entry. It is, of course, true that once the officers knocked on the door and announced, "open the door, this is the police," they heard sounds indicating that evidence was being destroyed.  But that exigency did not arise naturally or from reasonable police investigative tactics.  Quite to the contrary, the officers, after their pretextual announcements had failed to gain entry to room 511, deliberately created the exigency by knocking on the door to room 511 and demanding entry.

IV.

Focusing on the reasonableness of the officers' investigative tactics triggering the exigency, we conclude that the police impermissibly manufactured the exigency.  We

---

[15] Although the record is not clear as to whether Officer Wilson was dispatched to secure a search warrant, see note 2 *supra*, it is evident that there was sufficient time for the officers to have remained in surveillance pending the issuance of a warrant.

therefore hold that the exigent circumstances exception to the warrant requirement does not justify the warrantless entry and search of Coles's hotel room. As a result, the physical evidence that led to Coles's conviction, which evidence was the product of an unlawful search and seizure, should have been suppressed.

Accordingly, we will reverse the District Court's denial of Coles's suppression motion, and we will vacate Coles's conviction and sentence and remand to the District Court for further proceedings consistent with this opinion.

**U.S v. Coles, No. 04-2134**

_____

**ROTH**, Circuit Judge, dissenting:

The majority's opinion is based on the dubious proposition that two rights, as determined by the Supreme Court, make a wrong. More concretely, the majority's decision to focus the exigency analysis on the subjective intent of the investigating officers, and the subsequent, haphazard reaction the investigation generates on the part of the alleged criminal, produces the "could've, should've, would've" analysis that is so anathema to our judicial role. For these reasons, I respectfully dissent.

As an initial matter, the majority's central reliance on *Johnson* is misplaced. The majority seemingly accepts the government's argument that in *Johnson* "the Supreme Court did not rule that officers impermissibly created exigent

circumstances; instead, it noted that the government had not established an exigency", Maj. Op. at 14. In this regard, the majority and the government are correct – *Johnson* was not about exigent circumstances. In *Johnson*, the Supreme Court specifically found that "[n]o evidence or contraband was threatened with removal or destruction." 333 U.S. at 15. This case, however, is entirely about exigency. As opposed to the opium being smoked in *Johnson*, here the police heard the sound of a toilet flushing. Subsequently, the police found drugs in and around the toilet.

Nonetheless, the majority argues that here, as in *Johnson*, the police had no justification for knocking and demanding entry to Coles's hotel room before securing a warrant. The majority's use of *Johnson* ignores the salient, distinguishing factor with the instant case; here, there was a exigency.

With this misreading of *Johnson,* the majority then ignores the point that knocking and attempting to engage a person in conversation are not violations of the Fourth Amendment. *See generally Florida v. Bostick*, 501 U.S. 429, 439 (1991) (noting that "[t]he Fourth Amendment proscribes unreasonable searches and seizures; it does not proscribe voluntary cooperation."). Also, entry into a dwelling in the face of exigent circumstances when the police have probable cause is not a violation of the Fourth Amendment. *Payton*, 445 U.S. 586-87. The majority feels, however, that these two otherwise constitutional actions performed in sequence are greater than the sum of their parts and, therefore, constitute a violation of the Fourth Amendment because the police could have and, consequently, should have waited to obtain a warrant.

The majority's math is not supported by the Fourth Amendment. The majority implicitly acknowledges the fact that its analysis is constitutionally unmoored when it categorizes conflicting Fifth and Second Circuit precedent. According to the majority, the Fifth Circuit correctly focuses on the reasonableness of the police investigative tactics giving rise to the exigency while the Second Circuit incorrectly focuses on the legality. Maj. Op. at 18, 19. The majority's reasonableness test, however, imposes a standard for police behavior that is not derived from the Constitution.

The Fourth Amendment to the Constitution protects the people "against unreasonable searches and seizures." U.S. CONST. amend IV. Such unreasonable searches are "illegal" in the sense that they violate one's constitutional rights. In order to give import, however, to the difference between Fifth Circuit and Second Circuit jurisprudence, one must acknowledge a category of police behavior which is legal, *i.e*., not violative of the Constitution, yet unreasonable. Otherwise, the Fifth Circuit's use of "unreasonable" would be synonymous with the Second Circuit's use of "legal." The majority, however, goes to great lengths to distinguish the two competing threads of jurisprudence. The result is a reasonableness inquiry completely devoid of a base in the Fourth Amendment.

The practical flaw with the reasonableness inquiry is best captured in the majority's statement that the police "had no legitimate reason to utilize the 'knock and talk' procedure." Maj. Op. at 22. First, the majority's use of quotation marks around the phrase 'knock and talk' is a result of this investigatory technique entering the police lexicon due to its

compatibility with the Fourth Amendment in a way similar to the association of *Miranda* with the Fifth Amendment. *See Gould*, 364 F.3d at 590 (noting that the "'knock and talk' police investigatory practice has clearly been recognized as legitimate."). The majority's holding, however, disturbs this venerable precedent.

Second, the assertion that there was no legitimate reason for further investigation is purely speculative. By communicating with Coles, the police could have learned whether he was carrying a weapon, with whom he was expecting to transact business, or other bits of information which individuals are prone to disclose in like circumstances. The potential information would help the police meet the conviction burden of reasonable doubt – a concern reflected in the Supreme Court's observation that:

> Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction.

*Hoffa v. United States*, 385 U.S. 293, 310 (1966). The majority's opinion allows Coles's malfeasance to restrict law enforcement's ability to support a criminal conviction and is, therefore, an unwarranted departure from Supreme Court precedent.

Finally, the majority's opinion, and the adoption of the Fifth Circuit's jurisprudence, can only be implemented via an inquiry into the subjective intent of the officers who created the exigency. As the majority notes, the first step in the analysis is to ask "whether the officers deliberately created the exigent circumstances with the bad faith intent to avoid the warrant requirement." *Gould*, 364 F.3d at 590; Maj. Op. at n.11. Such an inquiry is inconsistent with this Circuit's precedent. *Acosta*, 965 F.2d at 1254 (quoting *Scott v. United States*, 436 U.S. 128, 136 (1978), for the proposition that "subjective intent alone . . . does not make otherwise lawful conduct illegal or unconstitutional.").

In contrast, the Second Circuit, whose precedent, I believe, is more consistent with our Circuit's in this area, relies on an objective test when analyzing exigent circumstances. *MacDonald*, 916 F.2d at 769. In this regard, the Second Circuit's focus is truer to Supreme Court precedent. *See generally Horton v. California*, 496 U.S. 128, 138 (1990) (arguing that "evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer.").

A correct inquiry analyzes each of the interactions between the police and Coles.[16] The first interaction between the police and Coles was Sgt. Josey's announcement of "room

---

[16] I note that the only issue on appeal vis-à-vis the motion to suppress is whether the police improperly created the exigency. Maj. Op. at 11.

service." The second interaction was Sgt. Josey's announcement that he was seeking entry to fix a reported leak. The third interaction was Sgt. Josey's announcement "open the door, this is the police." Upon then hearing the sound of a flushing toilet, the police entered the apartment. Since none of the three interactions violated the Fourth Amendment, and since entry was made only on hearing the toilet flushing, I would affirm the District Court's denial of Coles's motion to suppress the physical evidence.