

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-10-2007

# USA v. Parris

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2151

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Parris" (2007). *2007 Decisions.* Paper 1120.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1120

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-2151

———

UNITED STATES OF AMERICA;
GOVERNMENT OF THE VIRGIN ISLANDS

v.

MELVILLE A. PARRIS,

*Appellant*

———

On Appeal from the District Court of the Virgin Islands
Division of St. Croix
(D.C. Criminal No. 2004/0156-1)
District Judge: Honorable Anne E. Thompson

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 9, 2007

Before: SLOVITER, STAPLETON, and VAN ANTWERPEN, *Circuit Judges*.

(Filed May 10, 2007)

———

OPINION OF THE COURT

———

VAN ANTWERPEN, *Circuit Judge*.

Appellant Melville Alexander Parris was found guilty of being a felon in

possession of a firearm, ammunition, and body armor in violation of 8 U.S.C. §§ 922(g), 924(a)(2), and 931. On appeal, Parris argues: (1) physical evidence introduced at trial should have been suppressed as the fruit of an illegal search, and (2) the District Court committed reversible error when it allowed him to be tried in his prison uniform. He seeks a new trial.

The District Court of the Virgin Islands had jurisdiction over this criminal case pursuant to 18 U.S.C. § 3231 and 48 U.S.C. § 1612. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. For the reasons set forth below, we will affirm.

*I.*

Because we write solely for the benefit of the parties, we will set forth only those facts necessary to our analysis.

At 8:54 a.m. on September 10, 2004, Sgt. Thomas Hannah, of the Virgin Islands Police Department, received a call from his adult daughter, Tineja Hannah, who reported hearing gun shots coming from a bedroom at 309 Estate Grove Place. Sgt. Hannah testified that he heard what sounded like a muffled gunshot while on the telephone. Sgt. Hannah called 911 and police were dispatched. He then resumed talking with his daughter, who stated that the shooter had come out of the house, fired two shots, and returned inside.

Police radioed additional information to the responding officers, identifying the shooter as Melville Parris and reporting that Parris had just gotten out of prison.

2

Responding Officer Deborah Hodge testified that she considered the situation to be serious and that police took cover behind their cars at the scene.

Officer Hodge testified that she and Officer Danny Rodriguez approached the house and knocked on the door. Virginia Prentiss, later determined to be Parris' elderly mother, appeared at a window next to the door. After identifying themselves, the officers told Ms. Prentiss they had received a report that Parris was discharging shots in the house and they were concerned for everyone's safety. Ms. Prentiss opened the door slightly and stood blocking the doorway. The officers asked Ms. Prentiss if she knew Parris and if he was home. Ms. Prentiss responded that Parris was her son and that he was not home. Officer Hodge testified that Officer Rodriguez then pushed the door open slightly out of concern that someone might be hurt or being held hostage inside the home. Officer Hodge testified that she saw two small children inside the home, who appeared to be scared. An older boy took the children out of the house. Ms. Prentiss' adult daughter then appeared, took Ms. Prentiss out of the home, and informed police that Parris lived at the residence.

Officer Hodge testified that she and Officer Rodriguez entered the home and conducted a quick visual sweep to determine if anyone was hurt or being held hostage. The officers came upon one door in the home that was locked. Officer Hodge testified that the fact that the door was locked made her feel "[v]ery unsafe." Supp. App. at 33. She explained that several factors indicated that someone could be hurt or hiding in the

3

room with a weapon, including the reports of gunfire, the fact that Parris had recently been released from prison, and the door being locked. An officer positioned outside of the house reported that he could see someone hiding under the bed in the locked room. The officers knocked on the door and ordered Parris to come out. Parris came out of the room, but pulled the locked door shut behind him. Officers immediately restrained and handcuffed him, and took the key to the locked door from him. Officer Hodge testified that police opened the door and searched under the bed where Parris had been hiding to see if anyone was hurt or if another person was also hiding there; instead, police found a gun. At this point, the search was stopped so that officers could obtain a search warrant.

After he was taken outside the home, but before being placed in the police car, Parris asked to speak with Sgt. Ishmael Ramirez. Ramirez questioned Parris, who was handcuffed, about the location of other guns inside the home. Parris had not been advised of his *Miranda* rights at this time. Parris showed police where a second gun was located in the house. Parris was then taken to the police station, advised of his *Miranda* rights, and made an oral confession.

After obtaining a warrant that afternoon, police conducted a full search. In total, police seized the following items from Parris' bedroom: a .22 caliber handgun, a shotgun, spent casings for the .22 caliber gun, crack cocaine, ammunition, a bulletproof vest, and a ski mask. Police also found spent casings outside the home and a bullet hole in a window in Parris' bedroom.

4

A seven-count indictment was returned on October 21, 2004, charging Parris with being a felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2) and 14 V.I.C. § 2253; being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2) and 14 V.I.C. § 2256(a); and being a felon in possession of body armor, in violation of 18 U.S.C. § 931.

Parris filed a motion to suppress all physical evidence seized from his bedroom, the statements made during his un-Mirandized conversation with Sgt. Ramirez, and the post-arrest confession he gave at the police station. The District Court held an evidentiary hearing on the motion on June 28, 2005, in which it heard testimony from five government witnesses and three defense witnesses. The District Court denied the motion in part and granted it in part on September 8, 2005. It denied the motion as to all physical evidence and the statements made by Parris at the police station. It granted the motion as to any communication or communicative conduct concerning the second gun made by Parris during his conversation with Sgt. Ramirez at 309 Grove Place.

The local ammunition charge was dismissed prior to trial on the government's motion. All local firearms charges were dismissed at the end of the government's case pursuant to Parris' Rule 29 motion.[1] On September 15, 2005, a jury found Parris guilty of

---

[1]Federal Rule of Criminal Procedure 29(a) provides, in relevant part: "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."

the three remaining federal offenses. The District Court sentenced Parris to 60 months' imprisonment for each count, to run concurrently, as well as three years of supervised release, a $2,000 fine, and a special assessment of $400. This timely appeal followed.

## II.

### A.

Parris first argues the District Court erred in denying his motion to suppress physical evidence seized from his bedroom that was introduced at trial. We review the District Court's denial of the suppression motion for clear error as to the underlying facts and exercise plenary review as to its legality in light of those properly found facts. *United States v. Coles*, 437 F.3d 361, 365 (3d Cir. 2006) (citing *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003)).

The Fourth Amendment to the United States Constitution provides, in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. We have noted that the Fourth Amendment "does not forbid all searches and seizures but only such as are unreasonable." *United States v. Rubin*, 474 F.2d 262, 268 (3d Cir. 1973).

The warrantless search of a home is presumptively unreasonable under the Fourth Amendment. *Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006) (citing *Payton v. New York*, 445 U.S. 573, 586 (1980)). However, there are several recognized exceptions to the

6

warrant requirement, including the existence of exigent circumstances. *Id.*; *see also Coles*, 437 F.3d at 365-66. "Examples of exigent circumstances include, but are not limited to, hot pursuit of a suspected felon, the possibility that evidence may be removed or destroyed, and danger to the lives of officers or others." *Coles*, 437 F.3d at 366 (citing *United States v. Richard*, 994 F.2d 244, 248 (5th Cir. 1993)); *see also Couden*, 446 F.3d at 496 ("Exigent circumstances exist where 'officers reasonably . . . believe that someone is in imminent danger.'") (quoting *Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir. 1996) (emphasis omitted)). To be reasonable, a warrantless search premised on exigent circumstances must also be supported by probable cause. *Coles*, 437 F.3d at 365. In determining whether there were exigent circumstances, a court reviews the totality of the circumstances, including "the facts and reasonably discoverable information available to the officers at the time they took their actions." *Estate of Smith v. Marasco*, 318 F.3d 497, 518 (3d Cir. 2003) (citing *United States v. Sculco*, 82 F.Supp.2d 410, 417 (E.D. Pa. 2000)); *see also Rubin*, 474 F.2d at 268.

Parris argues the motion to suppress should have been granted because exigent circumstances did not exist to justify the warrantless search of his bedroom. The District Court concluded exigent circumstances justified the warrantless entry of the home and the search under Parris' bed that revealed the first gun. Specifically, the Court found it "reasonable for the police to believe that people either inside the house or within the proximity of No. 309 Grove Place were endangered by the shooter." Supp. App. at 215.

7

"The presence of exigent circumstances is a finding of fact, which we review for clear error." *Coles*, 437 F.3d at 366 (citing *Richard*, 994 F.2d at 248).

The District Court's finding of exigent circumstances to justify the warrantless entry of the home is amply supported by the record. Before arriving at the scene, police received information that someone was firing a gun inside the home at 309 Grove Place; that the shooter came out of the house, fired two shots, and went back inside; and that the shooter was recently released from prison. When they approached the house, Ms. Prentiss lied to police, telling them Parris was not home, and she blocked the entranceway so that officers could not see if anyone was hurt or being held against their will inside. The officers also saw small children in the home who appeared to be scared.

While it presents a closer question, we also believe exigent circumstances would justify the warrantless search under Parris' bed;[2] however, we need not reach this issue. Even assuming, *arguendo*, that this search was improper, the gun seized from underneath the bed would be admissible pursuant to the inevitable discovery doctrine. *Nix v.*

---

[2]Once inside the house, police conducted a quick visual sweep for safety purposes and learned that the room in which the shooter had been firing the gun was locked. Officer Hodge testified that another officer positioned outside the home looked into the locked bedroom through a window and could see a foot protruding from under the bed, at which point that officer yelled, "Under the bed." Supp. App. at 34. Officers ordered Parris out of the room and he complied, but pulled the locked door shut behind him. Even after Parris was handcuffed outside the bedroom, police had no way of knowing if someone else remained hurt or restrained inside the locked room. The officers retrieved the key and conducted a limited search under the bed to be certain no one was injured or restrained. In doing so, they found a gun. Police immediately stopped the search and obtained a search warrant before proceeding.

8

*Williams*, 467 U.S. 431 (1984). The Supreme Court has held that where "the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale [of the exclusionary rule] has so little basis that the evidence should be received." *Id.* at 444. The government can meet its burden by showing "that the police, following routine procedures, would inevitably have uncovered the evidence." *United States v. Vasquez De Reyes*, 149 F.3d 192, 195 (3d Cir. 1998). Such evidence of inevitable discovery "focuses on demonstrated historical facts capable of ready verification and impeachment." *Id.* We have noted that "the inevitable discovery doctrine has generally been applied in the context of acquiring physical evidence, such as drugs or weapons." *Id.*

It is undisputed that police obtained a valid search warrant and conducted a lawful search of 309 Grove Place on the same afternoon as the incident described above. From this lawful search, police seized additional physical evidence from the home. Following routine procedures in executing this search warrant, it is inevitable that police would have found the gun that was retrieved when police conducted the warrantless search under Parris' bed. Accordingly, this piece of physical evidence was properly admitted.

*B.*

Parris next argues the District Court committed reversible error when it allowed him to be tried while wearing his prison uniform. The Supreme Court has held that a State cannot, consistent with the Fourteenth Amendment, *compel* a defendant to stand

trial before a jury while wearing identifiable prison clothes. *Estelle v. Williams*, 425 U.S. 501, 512 (1976). However, the Court further explained that "the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." *Id.* at 512-13.

Parris asserts his due process rights were violated because he appeared in prison clothing in front of the jury. The government asserts that Parris did not appear in a prison uniform at any point throughout the trial.[3] We need not resolve this factual dispute. Even accepting Parris' assertion that he did wear identifiable prison clothing before the jury, Parris did not object in the District Court to being tried in such clothing. His failure to object to the District Court negates the compulsion necessary to establish a due process violation. *Estelle*, 425 U.S. at 512-13. Furthermore, we note that any error would be harmless beyond a reasonable doubt in light of the overwhelming evidence presented against Parris at trial. *See Lemons v. United States*, 489 F.2d 344, 346 (3d Cir. 1974) (harmless error analysis applies where defendant claims due process violation for being compelled to wear prison clothing at trial).

*III.*

We have considered all other arguments made by the parties on appeal, and

---

[3]In a sworn affidavit submitted with his brief, Parris admits that he did remove his prison shirt, at the suggestion of the marshal, before the trial began. However, he does not specify what clothing he wore during the trial or explain why such clothing would have been identifiable as prison clothing.

10

conclude that no further discussion is necessary. For the foregoing reasons, we will

affirm Parris' conviction.