

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-16-2008

# USA v. Tyree

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1085

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Tyree" (2008). *2008 Decisions*. Paper 536.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/536

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 07-1085

_____

UNITED STATES OF AMERICA

v.

JASON TYREE,
        Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No.05-cr-00728-1)
District Judge: Honorable Stewart Dalzell

_____

Submitted Under Third Circuit LAR 34.1(a)
September 8, 2008

Before: SLOVITER, FUENTES and NYGAARD, Circuit Judges

(Filed September 16, 2008)

_____

OPINION

_____

SLOVITER, Circuit Judge.

Jason Tyree appeals the District Court's denial of his motion to suppress and one count of conviction based on insufficient evidence. We will affirm.

**I.**

On January 30, 2005, two masked men entered a Dunkin' Donuts store in Easton, Pennsylvania, and demanded money. One of the men, an African-American later identified as Tyree, pointed a gun at the two employees, threatening to shoot them if they did not comply. The men netted approximately $600 from the robbery, which was recorded on the store's surveillance video.

The robbers left latent footprints on the just-mopped floor. Lieutenant Barry Golazeski developed some of the prints, and determined they were from Phat Farm sneakers. Golazeski also observed from the surveillance video that one of the men had a "shorter, much stockier build." App. at 126. Approximately ten days later, Golazeski was notified that an individual fitting the description of this robber and wearing Phat Farm sneakers was at an Easton courthouse. Golazeski met Tyree at the courthouse, and Tyree agreed to speak with him in private.

At the Sheriff's Department, Golazeski told Tyree about the Dunkin' Donuts robbery and Tyree agreed to stand on paper to create a dust impression with his sneakers. Golazeski observed the impression to be similar in brand, size, tread, and wear pattern to the prints from the Dunkin' Donuts. Golazeski told Tyree he wanted an expert opinion,

2

so "you can either turn the[ shoes] over to me or I can apply for a search warrant." App. at 128. When Tyree declined to give him the shoes, Golazeski said he would have to remain at the Sheriff's Department "to see if this warrant is approved or declined," App. at 129, to avoid the possibility that the shoes would "disappear," App. at 144. Tyree refused to wait the three to four hours it would take to apply for the warrant, and gave Golazeski the shoes. A subsequent laboratory analysis showed that the prints left at the Dunkin' Donuts store "correspond[ed] in tread design, size and wear" with Tyree's shoes, and that the prints "could have been made" by Tyree. App. at 250.

On February 19, 2005, the 12th Street Market in Easton was robbed by three or four masked and armed men, one of whom the jury found to be Tyree. The men took money from one register and took another register with them. A civilian passerby chased the men after they ran out of the store, and saw them get into a gold-colored, mid-size sedan. The men eventually fled on foot, leaving the cash register and a loaded .22-caliber revolver alongside the car.

On May 4, 2005, two armed men, later identified as Tyree and Paul Barr, entered the First Commonwealth Federal Credit Union in Easton. Tyree pointed a gun at the tellers and demanded money. The robbers took $63,500 from the safe. The robbers, a black "stocky" male and a white male, fled in a light-colored tan or metallic gold sedan. App. at 374. Some hours later, off-duty Easton Police Captain Sheldon Smith observed two men in a car matching this description five blocks from the bank, who were then seen

3

entering a building.  Officer Matthew Gerould arrived, and observed the parked car.  He also observed a black man and a white man, both of whom he immediately recognized, coming from the building.  Gerould knew Tyree was a suspect in other robberies.

Gerould ordered the men on the ground with his gun drawn and handcuffed them. Lieutenant Michael Orchulli conducted a pat-down search of Tyree's person.  He noticed a "large bulge" in the pocket of Tyree's pants, and asked twice what it was without receiving an answer.  App. at 170.  "[C]oncerned that it might be a weapon," Orchulli removed the item, which was two stacks of cash wrapped in bank wrappers, totaling around $2,500.  App. at 170.  Tyree was arrested and a search of the car produced an additional $18,000 in cash.

At the Police Department, Captain David Ryan gave Tyree <u>Miranda</u> warnings. Tyree signed a waiver of his rights, and admitted his involvement in the credit union robbery.  Tyree stated his "discomfort with being a snitch," App. at 191, but eventually disclosed his accomplice's name and also the location of the gun, which was a BB gun, and the men's masks.  Tyree was asked about other robberies, and admitted his involvement in the 12th Street Market and Dunkin' Donuts robberies.

A federal grand jury charged Tyree with three counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951; three counts of using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c); and one count of armed bank robbery, in violation of 18 U.S.C. § 2113(d).  Tyree pled not guilty, and filed a pre-trial motion to suppress physical evidence and his statements to the police.  The District Court denied the

4

motion orally and in a written opinion, finding the testimony of the police officers "entirely credible and reliable." App. at 8. After a six-day trial, the jury found Tyree guilty of all charges except one count of Hobbs Act robbery and one count of using a firearm during a crime of violence. He was sentenced to 492 months imprisonment and five years supervised release. Tyree appeals the District Court's denial of his motion to suppress and also challenges the sufficiency of the evidence for one of the firearm convictions.

## II.

A.    <u>Motion to Suppress</u>

We review the District Court's denial of the motion to suppress for clear error as to the underlying factual findings and we have plenary review over the Court's application of the law to those facts. United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002).

1.    *Probable Cause to Arrest*

Probable cause to arrest exists when the facts and circumstances suggest that "a reasonable person [would] believe that an offense has been . . . committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995). Probable cause determinations require analysis of the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 233 (1983). Tyree argues that the officers lacked probable cause to arrest him because they only knew the credit union had been robbed by a stocky black male and a white male who had fled the scene in a beige or gold sedan. Tyree relies on United States v. Kithcart, 134 F.3d 529, 532 (3d Cir. 1998), where we

5

held that the police were not justified in arresting "any African-American man who happened to drive by in any type of black sports car" based on information "that two black males driving a black sports car were believed to have committed three robberies in the area some relatively short time earlier . . . ."

Like in Kithcart, "[t]he mere fact that [Tyree] is black and [one of] the perpetrators had been described as [one] black male[] is plainly insufficient." Id. at 531. However, unlike in Kithcart, where the match between the description of the suspects' car and the car in which the defendant was seen was "far from precise," id. at 531, here the gold-colored sedan was "fitting the, almost the exact description of the robbery from the Credit Union earlier that day . . . ." App. at 156. Moreover, unlike in Kithcart, where there was no evidence that the police knew the physical proximity of the robbery to the vehicle stop, here the credit union robbery had occurred "[a] couple of blocks" from where Tyree was seen. App. at 157. The officers also knew that Tyree was a suspect in other robberies in Easton. When Tyree twice refused to explain what the bulge in his pocket was, Orchulli removed it and saw two large bundles of cash. An analysis of the totality of the circumstances supports the District Court's probable cause determination.

2.     *Invocation of the Right to Remain Silent*

Tyree claims the police failed to scrupulously honor his invocation of the right to remain silent after he said that he did not want to answer further questions. The Supreme Court has held that once a defendant in custody invokes the right to remain silent, police

6

officers must "scrupulously honor[]" that request. <u>Michigan v. Mosley</u>, 423 U.S. 96, 104 (1975). In the context of an accused invoking the right to counsel, police must stop questioning only where s/he unambiguously invokes that right; "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect <u>might</u> be invoking the right to counsel, our precedents do not require the cessation of questioning." <u>Davis v. United States</u>, 512 U.S. 452, 459 (1994). The inquiry is an objective one. <u>See</u> <u>id.</u>

After waiving his <u>Miranda</u> rights before Ryan, Tyree admitted his involvement in the bank robbery but repeatedly stated that it was not his idea and that he did not want to "snitch." App. at 191. He ultimately disclosed the name of his accomplice, where the BB gun used in the robbery could be found, and what he did with his share of the money. After this line of questioning, Tyree was asked about other robberies, including the Dunkin' Donuts robbery, and this exchange ensued:

| [Ryan:] | We would like to talk to you about the robbery at 12th Street Market. |
|---|---|
| [Tyree:] | That wasn't me – that wasn't me. |
| [Ryan:] | Who was it? |
| [Tyree:] | I already went through this – it was not me – I gave my own name out. I don't want people thinking I put their name out. |
| . . . . | |
| [Ryan:] | Dunkin Donuts? No one got killed in that either – did you intend to hurt anyone in that one? |
| [Tyree:] | I told you I didn't even want to do none of this at all. |

Supp. App. at 10. Tyree claims this last statement was an invocation of his right to

7

remain silent; Ryan testified that he understood it to refer "to him not wanting to be the rat, not wanting to be the snitch, not wanting to talk about the other people involved in these robberies with him." App. at 206.

The District Court found that Tyree's statement was ambiguous, and thus was not a clear invocation of his right to remain silent. Although the Davis requirement of unambiguity applies expressly to the right to counsel, "every circuit that has squarely addressed the issue has applied the same standard to the right to remain silent." App. at 12 n.5 (citing Bui v. DiPaolo, 170 F.3d 232, 239 (1st Cir. 1999) (citing cases)). See, e.g., United States v. Hurst, 228 F.3d 751, 759-60 (6th Cir. 2000); Medina v. Singletary, 59 F.3d 1095, 1100-01 (11th Cir. 1995). The other circuits have left the issue open, see, e.g., James v. Marshall, 322 F.3d 103, 108 (1st Cir. 2003); Soffar v. Cockrell, 300 F.3d 588, 594 n.5 (5th Cir. 2002), but none has held, as Tyree argues, that the test is "whether a reasonable officer would have felt the need to clarify whether the suspect was invoking his right to remain silent." Appellant's Br. at 33-34. We conclude that Tyree's statement, considered in context, "did not constitute even an equivocal invocation of his right to remain silent," United States v. Ramirez, 79 F.3d 298, 305 (2d Cir. 1996), and thus we need not decide whether the Davis standard applies. Assuming, however, that it does apply to the right to remain silent, Tyree's statement, viewed in context, "did not require the cessation of questioning since his silence certainly did not constitute a 'clear[ ]' request that all further questioning cease." Id.

8

3. *Seizure of Tyree's Sneakers*

Tyree argues that the District Court erred in holding that he voluntarily consented to the seizure of his sneakers or that the seizure was justified based on exigent circumstances. Voluntariness "is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). The District Court's determination that Tyree's consent was voluntary is reviewed for clear error. United States v. Givan, 320 F.3d 452, 459 (3d Cir. 2003).

Although there was a coercive element in Golazeski's statement that Tyree would have to remain at the police station while he applied for a warrant, we deem the coercion minimal, given that exigent circumstances, i.e., "the possibility that evidence may be removed or destroyed . . . ." United States v. Coles, 437 F.3d 361, 366 (3d Cir. 2006), justified a warrantless seizure of Tyree's shoes. Exigent circumstances "do not meet Fourth Amendment standards if the government deliberately creates them."[1] Id. However, Tyree acknowledges Golazeski may have had probable cause for a magistrate to issue a search warrant for the shoes. Golazeski sought Tyree's consent to obtain a dust impression, which consent he received, and also sought his consent to turn over the shoes.

---

[1] The District Court stated that the exigent circumstances doctrine "would likely" justify the warrantless seizure of the shoes. App. at 9. Although it is unclear whether this constitutes a finding by the Court regarding the presence of an exigency, "we may affirm on any ground supported by the record . . . ." In re Teleglobe Commc'ns Corp., 493 F.3d 345, 385 (3d Cir. 2007).

After finding the impressions matched the footprint evidence, Golazeski had probable cause and he could reasonably believe that the highly-mobile sneaker evidence may be destroyed while awaiting the warrant. See United States v. Rubin, 474 F.2d 262, 268 (3d Cir. 1973). Thus, the exigency arose "naturally or from reasonable police investigative tactics . . . ." Coles, 437 F.3d at 371. We reject Tyree's challenge to the District Court's denial of the motion to suppress.

B.      Firearm Conviction

Tyree claims there was insufficient evidence for the jury to have found that the gun involved in the Dunkin' Donuts robbery was a "firearm" under 18 U.S.C. § 921(a)(3). The police recovered three weapons: a .22-caliber revolver and two pistol-style pellet BB guns. The revolver and one of the BB guns were found together in the gold-colored car following Tyree's flight from the 12th Street Market robbery. The other BB gun, which Tyree admitted using in the credit union robbery, was found after Tyree told police where to look.

One of the Dunkin' Donuts employees on the night of the robbery, Peggy O'Shea, testified about the weapon pointed at her by Tyree. It had "a long snout. It looked like a western gun, like something in the cowboys and Indians. . . . I remember seeing like a wooden handle, a black gun with a long snout." App. at 412-13.[2] A witness' testimony

---

[2] Tyree seizes on O'Shea's testimony that she had previously described the gun as a pistol, and that she was never asked to identify the gun. At trial, O'Shea explained that she considered a

10

can be sufficient evidence for a jury to conclude that the defendant used a firearm in the commission of his crime, even if the gun was not recovered. See United States v. Beverly, 99 F.3d 570, 572-73 (3d Cir. 1996). The jury was also shown the recovered revolver and was able to compare it with O'Shea's description and with the surveillance video, and Tyree's accomplices testified that Tyree possessed a .22-caliber revolver. The evidence was sufficient for a jury to find that Tyree used a firearm in the commission of a violent crime.

### III.

For the above-stated reasons, we will affirm the judgment of conviction.

---

"pistol" to be more like a handgun, "not a shotgun, not something you use for hunting." App. at 413.