

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-8-1998

# United States v. Vasquez De Reyes

Precedential or Non-Precedential:

Docket 97-7328

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"United States v. Vasquez De Reyes" (1998). *1998 Decisions.* Paper 150.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/150

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 8, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-7328

UNITED STATES OF AMERICA

v.

BELKI MARIA VASQUEZ DE REYES,

        Appellant

On Appeal from the District Court
of the Virgin Islands
(D.C. No. 96-cr-00079)

Argued December 11, 1997

Before: SLOVITER, STAPLETON and MANSMANN,
Circuit Judges

(Filed July 8, 1998)

        Patricia Schrader-Cooke (Argued)
        Office of Federal Public Defender
        Christiansted, St. Croix,
        U.S. Virgin Islands 00822

         Attorney for Appellant

        David L. Atkinson (Argued)
        Office of the United States Attorney
        Christiansted, St. Croix,
        U.S. Virgin Islands 00822

         Attorney for Appellee

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant Belki Maria Vasquez De Reyes appeals her conviction for marriage fraud, 8 U.S.C. S 1325(b) (1991) (now codified at S 1325(c)), contending that illegally secured evidence was erroneously admitted. Ms. De Reyes argues that the district court erred by admitting, under the inevitable discovery doctrine, testimonial evidence acquired as a result of an unlawful stop. We have jurisdiction under 28 U.S.C. S 1291. Our review of the factualfindings is for clear error, and our review of the district court's application of a legal standard is plenary. See United States v. Herrold, 962 F.2d 1131, 1136 (3d Cir. 1992).

I

The relevant facts are undisputed. In November 1996, agents from the Immigration and Naturalization Service operating in the Virgin Islands received a tip from an informant that three female illegal aliens would be in Maxi's Bar in Christiansted on the island of St. Croix of the United States Virgin Islands to sell fraudulent numbers for permanent residency cards (or "green cards"). The three women were described with minimal characteristics as follows: one had red hair; another was short and"hefty" with brown hair; the third was named Carmen. The INS officers had no other details about the women.

INS agents Thomas Annello and Alec Lee proceeded to the bar where Annello encountered Ms. De Reyes, a native of the Dominican Republic, who proceeded to walk away. Annello instructed Lee to stop Ms. De Reyes, a stop the district court found was illegal because there was insufficient cause. In that connection, it is noted that when the issue arose Annello testified Ms. De Reyes appeared to have a reddish tint to her hair, but Lee testified that she had brown hair. Following the stop, Ms. De Reyes was detained and questioned about her citizenship. She admitted she was a citizen of the Dominican Republic and

2

claimed she was legally present in the Virgin Islands under a visa. Ms. De Reyes asked a friend to fetch her purse from a nearby residence, and was able to produce papers showing that she was married to Escolastico De Reyes, a resident of the Virgin Islands, but she was unable to produce a document showing she was legally present in the United States. Ms. De Reyes was transported first to INS headquarters but when she was unable to contact her husband, she was transported by INS to a correctional facility where she was incarcerated overnight.

The next morning Escolastico De Reyes arrived at INS headquarters looking for his wife. When he was questioned by Agent Annello about his marriage, he maintained that Ms. De Reyes was in fact his wife. However, Annello then visited Escolastico De Reyes' home, where he observed very few articles of women's clothing, a fact which led him to question whether Ms. De Reyes did live there. Then Escolastico De Reyes' mother told Annello that Ms. De Reyes did not live with Escolastico, following which Escolastico De Reyes confessed that the De Reyes marriage was a fraud that had been established to enable Ms. De Reyes to obtain a permanent resident card.

When Ms. De Reyes was confronted with the information about her husband's confession and the visit by the INS to his home, she conceded the fraudulent nature of the marriage, and signed a written confession to having committed marriage fraud.

Ms. De Reyes entered a conditional plea pursuant to Fed. R. Crim. P. 11(a)(2) and filed a motion to suppress all evidence of items and statements taken from her and obtained pursuant to the stop outside the bar on the basis that the INS agents lacked reasonable suspicion to hold and question her. The district court granted the motion to suppress because it found the evidence was the fruit of an unlawful stop that was unsupported by reasonable suspicion under the Fourth Amendment. The district court explained that the reasonable suspicion standard was not met in light of the agents' contradictory testimony regarding Ms. De Reyes' hair color and the fact that Ms. De Reyes failed to match even the sketchy description given by the informant. That finding is not challenged on appeal.

The government moved for reconsideration of the suppression of Escolastico's statements and Ms. De Reyes' post-Miranda confession. The government argued that the testimonial evidence was acquired independent of the illegal stop so that suppression was not required and that even if acquired illegally, the evidence would have been inevitably acquired through lawful means. On reconsideration, the district court granted the motion, finding that these statements would have been inevitably discovered through an INS investigation of the De Reyes marriage. The district court's ruling was based in part on the testimony of Andres Oversen, an INS adjudicator.

Oversen had testified concerning the INS procedures for obtaining a permanent residency card (generally called a green card) following the marriage of an alien to a United States (including Virgin Islands) resident. Such a card, which would enable a spouse to receive permission to live and work in the United States, can be obtained only after the filing of an I-485 form (an adjustment of status form). This is preceded by the filing of an I-130 form on behalf of the alien spouse. Although the I-130 form had beenfiled on behalf of Ms. De Reyes, they had not yet moved to the I-485 form stage. Oversen testified that there is no time limit within which an applicant must file the I-485 form.

After the I-485 form is filed and both spouses are on American soil, the INS ordinarily conducts an interview of the husband and wife. The spouses are interviewed separately and successively. Each is questioned about how they met, their families, their home life, theirfinances, their meals, and even any birthmarks each spouse may have. If the answers to these questions differ greatly, the adjudicator may request an investigator to visit the couple's home.

A spouse not on United States soil can receive a permanent residency card by the alternate procedure of completing a State Department form available at the United States Embassy of the spouse's home country. In such circumstances ordinarily only the applicant alien is interviewed. However, if the alien had been in the United States illegally prior to completing the form at the United

4

States Embassy, there is a ninety-day waiting period before an interview is scheduled.

Having admitted into evidence the confessions of Ms. De Reyes and the statements of her husband under the inevitable discovery doctrine, the district court found Ms. De Reyes guilty of violating the marriage fraud statute and sentenced her to time served, deportation and supervised release of three years.

The single issue on appeal is whether the district court erred in admitting the previously excluded evidence of Escolastico De Reyes' statement and Ms. De Reyes' post-Miranda confession under the inevitable discovery doctrine.1 Ms. De Reyes contends that the admission was erroneous because there are too many variables to find that a routine INS investigation would have inevitably discovered the testimonial evidence it uncovered regarding the sham marriage.

II

The exclusion of evidence illegally obtained is one of the cornerstones of federal criminal procedure. See Weeks v. United States, 232 U.S. 383, 391-92 (1914). Similarly,

_____

1. To the extent that the government contends that the evidence was legally acquired or otherwise purged of the taint of the illegal stop because De Reyes arguably came to the INS voluntarily, we disagree. The government relies on New York v. Harris, 495 U.S. 14 (1990), which reversed the state court's suppression of a statement because it was made independently of the illegal entry into defendant's home. Unlike Harris, in this case Mr. De Reyes came to the INS office only after he learned of the arrest of Ms. De Reyes, which was tainted by the earlier illegality. The district court's initial suppression order was apparently predicated on the recognition that Mr. De Reyes' presence at the INS was inextricably intertwined with the illegal stop and seizure of Ms. De Reyes.
This case is closer to Brown v. Illinois, 422 U.S. 590 (1975), where the Court held that the prosecution had failed to meet its burden under Wong Sun v. United States, 371 U.S. 471, 486 (1963), to show that the confession at issue was "sufficiently an act of free will to purge the primary taint of the unlawful invasion." Here also, the government has not shown that the statements were the result of an "act of free will unaffected by the initial illegality." Brown, 422 U.S. at 603.

5

incriminating evidence derived from the illegally obtained evidence, colorfully termed the "fruit of the poisonous tree," is also excluded. Wong Sun v. United States, 371 U.S. 471, 488 (1963). On the other hand, evidence that the prosecution can show has been discovered independent of any constitutional violation is not excluded. The underlying rationale for the independent source rule is that the exclusionary rule ensures that the police should not be in a better position as a result of their illegal action, but neither should they lie in a worse position.

That same rationale was used by the Supreme Court when it adopted the inevitable discovery rule. As set forth in Nix v. Williams, 467 U.S. 431 (1984),"[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received." Id. at 444. The rule so applied permits the court to balance the public interest in providing a jury with all relevant and probative evidence in a criminal proceeding against society's interest in deterring unlawful police conduct. See id. at 443.

In Nix, the defendant was arrested for the kidnapping and murder of a ten-year old. While transporting the defendant, a police officer violated the defendant's right to counsel by interrogating him and thereby discovering the location of the body. By that time, the police had begun an exhaustive search that subsequent testimony revealed would have discovered the body within hours of the defendant's disclosure of the location. The Supreme Court held the improperly acquired information could be admitted because the prosecution had proven by a preponderance of the evidence that the body would have inevitably been discovered during the course of the lawful search. See id. at 449-50.

It is the government's burden to show that the evidence at issue would have been acquired through lawful means, a burden that can be met if the government establishes that the police, following routine procedures, would inevitably have uncovered the evidence. See, e.g., United States v. Martinez-Gallegos, 807 F.2d 868, 870 (9th Cir.

6

1987). However, the Supreme Court made clear in Nix that the analysis should focus upon the historical facts capable of ready verification, and not speculation. Nix, 467 U.S. at 444, n.5.

It follows from the Court's approach that the inevitable discovery doctrine has generally been applied in the context of acquiring physical evidence, such as drugs or weapons. Thus when the government proves that its officers conduct a routine search in similar circumstances, a court is likely to adopt the government's argument that the evidence would have been discovered in the course of that search. An example is presented by the recent decision of the Tenth Circuit in United States v. Haro–Salcedo, 107 F.3d 769 (10th Cir. 1997), where the court held that cocaine evidence obtained from an unlawful search of an automobile was admissible because the police showed that the evidence would have been inevitably discovered in the inventory search of the automobile which always follows impoundment. Id. at 773. Similarly, in United States v. Kennedy, 61 F.3d 494 (6th Cir. 1995), the court held that cocaine in a misrouted suitcase would have been inevitably discovered when the airline searched for identification of the owner. Id. at 498. The court explained:

> Proof of inevitable discovery involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment and does not require a departure from the usual burden of proof at suppression hearings. The exception requires the district court to determine, viewing affairs as they existed at the instant before the unlawful search, what would have happened had the unlawful search never occurred.

Id. (citations and quotations omitted).

In this case, the district court held the statement of Escolastico De Reyes and the confession of Ms. De Reyes admissible under the inevitable discovery rule. The court, relying upon the INS testimony as to the procedures likely to be followed in the course of processing residency permits based upon alien marriages, concluded that, following routine procedures, INS agents would have inevitably

7

uncovered essentially the same evidence of marriage fraud that resulted in Ms. De Reyes' conviction.

In response to our inquiry, the government was unable to cite to any decision in which the inevitable discovery doctrine was applied to admit statements, as distinguished from physical evidence. While we know of no articulation of the inevitable discovery doctrine that restricts its application to physical evidence, and we are not prepared in this case to enunciate such a condition, it is patent why cases have generally, if not always, been so limited. A tangible object is hard evidence, and absent its removal will remain where left until discovered. In contrast, a statement not yet made is, by its very nature, evanescent and ephemeral. Should the conditions under which it was made change, even but a little, there could be no assurance the statement would be the same. Thus, even if we were to assume both that Ms. De Reyes would not have chosen to return to the Dominican Republic to apply for her residency card there, and that under routine INS procedures Ms. De Reyes and her putative husband would have been interviewed following her application for a residency card, there is no assurance that: (1) Ms. De Reyes would have filed her I-485 form without having taken any steps to create the illusion of a marriage with Escolastico De Reyes; (2) an INS agent would have "inevitably" become suspicious during the interview and would have requested an investigator to conduct a home visit; and (3) the interview and the home visit would have "inevitably" disclosed sufficient facts suggesting that the marriage was a sham such that Ms. De Reyes and her husband would have confessed to the fraudulent nature of the marriage. To reach all three conclusions requires engaging in precisely the type of speculation the Court proscribed in Nix.

One can just as plausibly presume that both Ms. De Reyes and her putative husband would have been prepared for the interview and that their friends and relatives would have been coached to help create the illusion of a legal marriage. We are simply unable to say with any certainty that the INS would have discovered anything close to the kind of conclusive evidence that Ms. De Reyes' confession and Mr. De Reyes' statements provided. See United States

8

v. Namer, 835 F.2d 1084, 1088 (5th Cir. 1988) ("[A]t a minimum, the government would have to offer a theory as to the manner in which agents would have made their discovery. We agree with the commentators that emphasis is on `would' not `might' or `could.' ") (citations omitted).

In adopting the inevitable discovery rule, the district court passed over several steps in the investigation process. First, the individual interviews are scheduled only after the I-485 form is submitted, which Ms. De Reyes had not yet filed. It is unknown when Ms. De Reyes would have filed the I-485 or even whether she would have done so in lieu of returning to the Dominican Republic to apply at the United States Embassy in Santo Domingo. Second, the home visit is ordered only if the interviewing INS agent has suspicions about the application. It is possible that Mr. and Ms. De Reyes would have been better prepared for the interview had it followed the usual course absent the illegal search. Third, even if a home visit were conducted, it is again plausible that the fraud would have been better disguised and more convincing.

Moreover, there was no testimony that sham marriages are inevitably uncovered as a result of interviews and home visits. In many respects, the discovery of a sham marriage rests upon the skill of the putative spouse at deception and the detective instincts of the INS interviewer. The INS investigation into the De Reyes marriage had not yet commenced. The investigative process is not foolproof but depends upon a number of variables.

We believe it requires an unacceptable degree of assumption and speculation to find that the incriminating evidence of marriage fraud would have been inevitably discovered. As the Seventh Circuit stated in United States v. Jones, 72 F.3d 1324 (7th Cir. 1995) "[s]peculation and assumption do not satisfy the dictates of Nix, however. Inevitable discovery is not an exception to be invoked casually, and if it is to be prevented from swallowing the Fourth Amendment and the exclusionary rule, courts must take care to hold the government to its burden of proof." Id. at 1334 (citations omitted). This is a case in which the government failed to meet its burden of proof.

For this reason, we hold that the district court'sfinding
that the testimonial evidence would have been inevitably
discovered by routine INS procedures cannot be sustained
and we will direct the district court to vacate the conviction.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit