NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2488
_____

UNITED STATES OF AMERICA

v.

WALTER FIELDS,
Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-09-cr-00109-001)
District Judge: Honorable Paul S. Diamond
_____

Submitted Under Third Circuit LAR 34.1(a)
September 12, 2011

Before:  RENDELL, JORDAN and BARRY, Circuit Judges.

(Opinion Filed: September 12, 2011 )
_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

Appellant Walter Fields ("Fields") pled guilty and was sentenced in the Eastern

District of Pennsylvania for unlawful possession of a firearm.  Pursuant to his plea

agreement, he reserved the right to appeal the denial of his motion to suppress physical

evidence that he possessed a gun.  He is now exercising this right and challenges the

denial of his motion to suppress on two grounds: (1) the Court erred in denying his motion on the grounds that the investigative detention was not elevated to the level of an arrest and (2) the Court erred in holding that the inevitable discovery doctrine allowed the seizure of the firearm to be consistent with the Fourth Amendment of the U.S. Constitution. This Court reviews factual findings underlying a motion to suppress for clear error and exercises plenary review over a district court's application of the law to those facts. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002). We have appellate jurisdiction pursuant to 28 U.S.C § 1291.

On the evening of January 24, 2009, Officers Crawford, Czapor, and DeLaurentis ("Officers") were patrolling a high-crime area in a marked patrol car when they observed Fields leave 3419 North A Street, an abandoned property which had been the subject of several neighborhood complaints of drug dealing. The Officers got out of the car and followed Fields who, upon seeing the Officers, began to flee. Officer Crawford caught up to Fields in an alley after he fell facedown on the ground. Fields kept his hands beneath the lower portion of his body and refused to show them. The Officers feared Fields was trying to reach for a weapon or attempting to discard some object. After unsuccessful attempts to get Fields' arms free, Officer Czapor shocked Fields twice with a taser. The Officers handcuffed him, lifted him to his feet, frisked him, and removed him from the area before returning to the alley with a flashlight. Within a minute, Officer Czapor found a Glock 22 handgun on the ground where Fields had fallen.

Fields was indicted by a grand jury for the possession of a firearm by a convicted felon in violation of 18 U.S.C § 922(g).[1]  Fields moved to suppress the firearm, but the Court denied his motion.  He pled guilty pursuant to a plea agreement in which he preserved his right to appeal from the District Court's denial of his suppression motion.  On May 21, 2010, the District Court sentenced Fields to 120 months in prison, 3 years supervised release, $1,600 fine, and a $100 special assessment.  This appeal followed.

Appellant raises two challenges to the denial of his motion to suppress as noted above.  As to the former question, the District Court concluded that the Officers did not arrest Fields when they deployed the taser.  Under the circumstances, the Officers acted reasonably in subduing Fields so that they could conduct a *Terry* frisk and their actions were "sufficiently limited in scope to satisfy the conditions of an investigatory stop," thus not developing into a de facto arrest.  *Florida v. Royer*, 460 U.S. 491, 500 (1983).  Accordingly, the abandonment of the gun was the "fruit" of a lawful Terry stop and was, therefore, admissible.  *See California v. Hodari D.,* 499 U.S. 621, 629 (1991).

Under the U.S. Supreme Court decision in *Terry v. Ohio*, 392 U.S. 1 (1968), a police officer may conduct a "brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot," without violating the Fourth Amendment.  *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (discussing *Terry*, 392 U.S.

---

[1] 18 U.S.C. § 922(g)(1) provides:
> It shall be unlawful for any person -- who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; …
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

at 30). In determining whether there is reasonable suspicion, we examine the totality of the circumstances and consider both a "particularized and objective basis for suspecting the particular person stopped of criminal activity" as well as, a trained officer's commonsense judgments and inferences about human behavior. *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). Pertinent factors that an officer may consider include whether the area is a high-crime area, a suspect's nervous or evasive behavior, and flight from police officers. *Wardlow*, 528 U.S. at 124.

Fields argues that the gun was the result of an unlawful arrest, and should have been suppressed. Fields does not dispute that the Officers had a reasonable suspicion of criminal activity and were permitted to conduct an investigatory stop under *Terry*. Rather, he argues that the use of the taser converted the stop into an arrest and the Officers lacked probable cause, a standard that requires more information than that needed to support reasonable suspicion.

*Terry* stops are permitted so that police officers can ensure their own safety, along with the safety of the public. *Terry*, 392 U.S. at 29. Here, the Officers responded to their belief that Fields was reaching for a weapon. Their actions were consistent with the actions of a reasonably prudent person under the belief that their own safety and the safety of others was at risk. Use of physical force after less aggressive means were unsuccessful did not elevate the stop into an arrest. *Graham v. Connor*, 490 U.S. 386, 396 (1989). ("the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it"). Under the circumstances, the Officers had a reasonable suspicion and therefore attempted a

4

*Terry* stop. Fields did not yield to the show of authority and created an environment where the Officers felt threatened; therefore, the use of physical force was reasonable under the objective reasonableness standard. *Id.* at 388. The Court did not err in denying the motion to suppress on the grounds that the investigative detention was not elevated to the level of an arrest.

The second issue raised by Fields involves the Court's alternative holding that the recovery of the weapon would have passed constitutional muster under the inevitable discovery doctrine. Under the that doctrine, "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means … then the deterrence rationale has so little basis that the evidence should be received." *United States v. Vasquez De Reyes*, 149 F.3d 192, 195 (3d Cir. 1998) (quotation omitted). Fields concedes in his argument that the Officers were legally allowed to stop Fields and pat him down for their protection. If Fields had cooperated, the gun would have been discovered during that investigation. Additionally, the Officers believed Fields was trying to dispose of something in the alley; therefore, a routine investigation of the alley would, and in this case did, lead to the discovery of the weapon. Accordingly, under the inevitable discovery doctrine, the recovery of the weapon was constitutional.

In light of the above, we will affirm.