**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 07-4629

———————

UNITED STATES OF AMERICA

v.

LUIS CARRION-SOTO,
                              Appellant

———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Crim. No. 1-06-cr-00906-001)
District Judge: Honorable Jerome B. Simandle

———————

Argued April 11, 2012

Before: McKEE, *Chief Judge*, HARDIMAN, *Circuit Judge*
and JONES, II,[*] *District Judge*

(Opinion Filed: August 17, 2012)

James S. Friedman, Esq. (Argued)
James S. Friedman, LLC
17 Academy Street, Suite 1100
Newark, New Jersey 07102
        *Attorney for Appellant*

Mark E. Coyne, Esq.
Steven G. Sanders, Esq. (Argued)
Office of United States Attorney

———————

[*] The Honorable C. Darnell Jones, II, District Judge for the United States District Court
for the Eastern District of Pennsylvania, sitting by designation.

970 Broad Street, Room 700
Newark, New Jersey 07102
   *Attorneys for Appellee*

———————

OPINION

———————

McKEE, *Chief Judge*.

Luis Carrion-Soto was convicted of conspiracy to distribute and possess with intent to distribute cocaine ("Count 1") and possession with intent to distribute cocaine and heroin ("Count 3") following a jury trial in the United States District Court for the District of New Jersey. He now appeals, challenging the District Court's denial of his motion to suppress evidence. For the reasons that follow, we will affirm the convictions, vacate the judgment of sentence, and remand for resentencing.

**I.**

Since we write primarily for the parties, who are familiar with the background of this case, we discuss the events leading to this appeal only briefly. Carrion-Soto was seated in the front passenger seat of a car when it was pulled over for speeding along Interstate 95 in Florence County, South Carolina. When the driver, Vergen Guzman, opened the glove compartment to retrieve her vehicle registration information, Corporal Wayne Drummond of the Florence County Sheriff's Office ("Florence County") saw a four-inch-thick stack of cash, which was divided into substacks and bound by rubber bands. Not surprisingly, this aroused Drummond's suspicion. His suspicion was further

2

aroused when Carrion-Soto and Guzman gave inconsistent responses to questions about their relationship and travel plans. As a result, Drummond sought and obtained Guzman's consent to search the car.

In the trunk, Drummond found, *inter alia*, a suitcase belonging to Carrion-Soto. Without seeking or getting Carrion-Soto's consent, Drummond opened the suitcase and found a cylinder that was wrapped in black tape and contained heroin. As the search of the car continued, one of the other officers on the scene looked under the rear passenger-side seat and found a rectangular object that was wrapped in black tape and contained cocaine. Carrion-Soto admitted that the cocaine was his, but denied that the heroin belonged to him.

After the drugs were found, Florence County Sergeant Scott Brown, who had arrived on the scene well before the search of the car began, used his patrol dog, "Treez," to "sniff" for other controlled substances. Treez alerted to the presence of narcotics near the trunk, and again alerted next to the suitcase.

Carrion-Soto was subsequently indicted in the District Court. He thereafter moved to suppress certain evidence, including the heroin that was recovered from his suitcase. The District Court concluded that since the officers could not reasonably have assumed that Guzman's consent extended to Carrion-Soto's closed suitcase in the trunk of the car, the seizure of the heroin found there was the fruit of an illegal search. Nevertheless, the court ruled that the heroin was admissible under the inevitable discovery doctrine. At the

3

ensuing trial, a jury found Carrion-Soto guilty of Counts 1 and 3, but not guilty of Count 2, which charged him with possession of cocaine with intent to distribute. He was sentenced to concurrent terms of 270 months' imprisonment on each of the counts of conviction. This appeal followed.[2]

## II.

The inevitable discovery doctrine "permits the introduction of evidence that inevitably would have been discovered through lawful means, although the search that actually led to the discovery of the evidence was unlawful." *United States v. Herrold*, 962 F.2d 1131, 1140 (3d Cir. 1992) (emphasis omitted). For the doctrine to apply, the government must establish by a preponderance of the evidence that the evidence in question would have been discovered through lawful means. *See United States v. Vasquez de Reyes*, 149 F.3d 192, 195 (3d Cir. 1998). That burden "can be met if the government establishes that the police, following routine procedures, would inevitably have uncovered the evidence." *Id.* "[T]he Supreme Court made clear in [*Nix v. Williams*, 467 U.S. 431 (1984),] that the analysis [under the doctrine] should focus upon the historical facts capable of ready verification, and not speculation." *Id.* (citing *Nix*, 467 U.S. at 444 n.5). The doctrine thus "'requires the district court to determine, viewing affairs as they existed at the instant before the unlawful search, what would have

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291. "We review the District Court's denial of a motion to suppress for clear error as to the underlying factual findings, and we exercise plenary review of its application of the law to those facts." *United States v. Bansal*, 663 F.3d 634, 651-52 (3d Cir. 2011).

happened had the unlawful search never occurred.'" *Vasquez de Reyes*, 149 F.3d at 195

(quoting *United States v. Kennedy*, 61 F.3d 494, 498 (6th Cir. 1995)).

Here, at the instant before Drummond unlawfully opened Carrion-Soto's suitcase,[3] the officers had obtained Guzman's consent to search the car but they had not yet found the cocaine or used Treez to detect the presence of any narcotics. Although the District Court concluded that "the discovery of the heroin was inevitable based on the search of the rest of the car that was already underway," (App. at A269), that conclusion is not based on the record and is little more than speculation based on the court's view of what would have followed based on "best practices" or the court's concept of reasonably thorough police work. Even though the suppression hearing lasted three days, the Government never asked any of the officers to testify about the procedures they would have followed had they found the cocaine before opening the suitcase.

It is certainly *possible* that, upon finding the cocaine, they would have opened the suitcase on the roadside[4] or, alternatively, impounded the car and opened the suitcase pursuant to an inventory search. *See Bansal*, 663 F.3d at 664 ("After taking custody of

---

[3] "The Government accepts for the sake of this appeal [the District Court's] conclusion that officers unreasonably searched Carrion-Soto's suitcase." (Gov't's Br. 16 n.6.)

[4] It seems that the officers would have had authority to do so based on their lawfully finding the cocaine. *See Arizona v. Gant*, 556 U.S. 332, 347 (2009) ("If there is probable cause to believe a vehicle contains evidence of criminal activity, [*United States v. Ross*, 456 U.S. 798, 820-21 (1982)], authorizes a search of any area of the vehicle in which the evidence might be found."); *Wyoming v. Houghton*, 526 U.S. 295, 302 (1999) ("When there is probable cause to search for contraband in a car, it is reasonable for police officers . . . to examine packages and containers without a showing of individualized probable cause for each one. A passenger's personal belongings . . . are 'in' the car, and the officer has probable cause to search for contraband *in* the car.").

property, officers may make a warrantless inventory search so long as the search is conducted pursuant to standardized procedures.") (citing *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976)). However, the Government must do more than establish the possibility that the evidence would have been discovered. Rather, the record must support a finding that the police had relevant procedures in place, that those procedures would have been followed, and that that would have inevitably led to the discovery of the evidence in question. *See Vasquez de Reyes*, 149 F.3d at 195. This record is simply not sufficient to allow the District Court to find by a preponderance of the evidence that either course of action referenced above would have been followed.[5] That is especially true because nothing on this record even suggests that the car was impounded or that the driver was detained longer than may have been needed to issue a traffic citation for speeding.

Nor is there sufficient evidence to establish that, had Drummond not opened the suitcase, the heroin would have inevitably been discovered through lawful means by the officers' use of Treez. Although Brown testified about the procedures he normally followed when using Treez to detect narcotics, it is undisputed that the Government did

---

[5] At the suppression hearing, Brown was asked on cross-examination whether he had "any reason to believe that something of an illegal nature was contained in [Carrion-Soto's suitcase]." (Suppl. App. at 132.) Brown responded that he "didn't have any reason to believe, we were just searching the whole vehicle and its contents." (*Id.*) Contrary to the Government's claim at oral argument, this testimony does not trigger the inevitable discovery doctrine here. The officers' search of the "whole vehicle and its contents" was tainted by Drummond's unlawful opening of the suitcase, and we cannot infer from that tainted search that the officers would have inevitably found the heroin through lawful means.

6

not establish that those procedures would have been followed here. Rather, Brown's use of Treez in this case *departed* from any standard procedures. Despite the fact that Brown and Treez arrived on the scene well before Drummond opened the suitcase, it was only *after* the heroin had already been found that Brown retrieved Treez to sniff the suitcase.

"Inevitable discovery is not an exception to be invoked casually, and if it is to be prevented from swallowing the Fourth Amendment and the exclusionary rule, courts must take care to hold the government to its burden of proof." *Vasquez de Reyes*, 149 F.3d at 196. If the officers here had appropriate procedures that would have been followed absent the unconstitutional search of the suitcase, it was the Government's burden to establish that during the suppression hearing. It is not for a court to speculate about any such procedures unless the facts are so clear as to justify taking judicial notice of them. That is certainly not the situation here. Rather, we have been handed a shovel and asked, not unlike the "'circus hand following the . . . elephant around the sawdust trail,'" to clean things up despite an embarrassingly sparse record on this key issue. *Pontarelli v. U.S. Dep't of the Treasury*, 285 F.3d 216, 238 (3d Cir. 2002) (en banc) (McKee, J., concurring in the judgment) (quoting *United States v. Gibbs*, 813 F.2d 596, 603 (3d Cir. 1987) (Aldisert, J., dissenting)). Because the Government did not meet its burden of establishing that the heroin would have inevitably been discovered, we must hold that the District Court erred in denying Carrion-Soto's motion to suppress the heroin.

### III.

The Government argues that "[e]ven if the District Court should have suppressed the heroin, any error in failing to do so was harmless beyond a reasonable doubt." (Gov't's Br. 25.) For a trial error of constitutional dimension to be harmless, the Government must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967). "To say that an error did not contribute to the verdict is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *Yates v. Evatt*, 500 U.S. 391, 403 (1991), *overruled on other grounds by Estelle v. McGuire*, 502 U.S. 62, 72 n.4 (1991).

We agree with the Government that the District Court's error here was harmless. First, Count 1 did not even involve heroin. Second, although Count 3 charged Carrion-Soto with possession with intent to distribute cocaine *and* heroin, a guilty finding as to *either* substance was sufficient to convict him on this count.[6] Given that (1) the jury, in returning a guilty verdict on Count 3, found Carrion-Soto guilty with respect to *both* substances, (*see* Suppl. App. at 1599), (2) he does not challenge the evidence undergirding the jury's finding of guilt as to the cocaine, and (3) he has not shown that that evidence was somehow tainted by the improper admission of the heroin, we conclude that the District Court's error here was "unimportant in relation to everything else the

---

[6] The District Court instructed the jury that it could convict Carrion-Soto on Count 3 if it found beyond a reasonable doubt that he possessed *either* the heroin or the cocaine. (*See* Suppl. App. at 1471.) Carrion-Soto does not argue that the instruction misstated the law, nor does he argue that the jury's finding that he possessed the cocaine was influenced by the evidence of his concomitant possession of heroin.

8

jury considered on the issue in question, as revealed in the record."[7] *Yates*, 500 U.S. at 403.

## IV.

In light of the above, we will affirm Carrion-Soto's convictions. Because the jury's finding of guilt as to the heroin may have influenced the sentence imposed by the District Court, we will vacate the judgment of sentence and remand for resentencing. In doing so, we realize that the District Court's findings in its Statement of Reasons suggest that the heroin did not change the suggested guideline range that the court relied upon, and that the court could probably consider the presence of the heroin for sentencing purposes in any event. *See United States v. Torres*, 926 F.2d 321, 325 (3d Cir. 1991). Nevertheless, since it is for the District Court to determine the appropriate sentence in the first instance, we think it appropriate to give that court an opportunity to decide if it would have imposed the same sentence if Carrion-Soto had only been convicted of the cocaine charged in Count 3 and not the cocaine and the heroin charged there.

---

[7] That the jury found Carrion-Soto guilty of the cocaine charge in Count 3 but not guilty of the cocaine charge in Count 2 does not change this result. Count 2 did not stem from the cocaine recovered from the car, but rather from an alleged cocaine transaction involving Carrion-Soto that took place the day before the car was stopped. (*See* Suppl. App. at 1416-18.)