NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4059
_____

UNITED STATES OF AMERICA

v.

TIONA L. JONES,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-09-cr-00171)
District Judge:  Honorable Gustave Diamond
_____

Submitted Under Third Circuit LAR 34.1(a)
October 23, 2012

Before:  HARDIMAN, GREENAWAY, JR., and VANASKIE, *Circuit Judges*.

(Filed: November 5, 2012)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

	Tiona Jones appeals her judgment of conviction following her conditional guilty

plea to possession with intent to distribute 100 grams or more of heroin in violation of 21

U.S.C. § 841.  Jones reserved the right to challenge the District Court's denials of her

motions to suppress evidence and her motion to dismiss the case for destruction of evidence. Because we discern no error by the District Court, we will affirm.

I

We write for the parties, who are well acquainted with the case, so we review only briefly the essential facts and procedural history.

On the afternoon of May 27, 2008, Jones was driving a car when she was pulled over for traffic violations. Detective Mark Goob of the Pittsburgh Police Department approached the driver's side of the vehicle and asked to see Jones's driver's license and registration. When Jones reached into her purse to retrieve her license, Goob saw a Louis Vuitton change purse "sitting . . . on top of all the other items" inside the larger purse. Goob observed that the change purse was so full that it was "forced open" by its contents, which he believed, based on his extensive experience, to be "several bricks of heroin." Goob placed Jones under arrest.

After receiving *Miranda* warnings, Jones offered that there was more heroin at her house and that she wanted it removed before her son returned home from school. During the ride back to her home, Jones reiterated that she would show the officers where the rest of the drugs were and agreed to sign a consent-to-search form. When the group arrived at Jones's home, the officers escorted her into the house where, ten minutes later, she signed the form. Jones then led the officers upstairs to her bedroom, where they found 278 bricks of heroin in her dresser.

Jones was initially charged in state court, but those charges were *nolle prossed* after she was indicted federally. Nevertheless, the evidence—which included all of the heroin and the change purse—remained in the Pittsburgh Police Department's property room for safekeeping. It remained there until the Department destroyed it, unaware that the case was still pending in federal court.

Jones moved to suppress the heroin the officers seized from her car and from her home. She also moved to dismiss the case because of the destruction of evidence. During motion proceedings, Jones offered an account of the events of May 27, 2008 that diverged significantly from the officers' testimony. Finding Jones "not entirely credible," App. 25 n.3, 38, the District Court concluded that because the heroin in Jones's purse had been in plain view and she had voluntarily consented to a search of her home, the seizure of the drugs was not the fruit of an illegal search. The Court also denied Jones's motion to dismiss the case, concluding that the evidence was not destroyed in bad faith. Following these rulings, Jones pleaded guilty to possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. § 841. The District Court sentenced her to sixty months' imprisonment and a four-year term of supervised release. This appeal followed.

## II

Jones challenges three decisions of the District Court: (1) its refusal to suppress the heroin discovered in her purse during the traffic stop; (2) its refusal to suppress the heroin

discovered in her home; and (3) its denial of her motions to suppress the evidence and dismiss the case based upon the destruction of the evidence. The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291. When reviewing a district court's suppression ruling, we review its factual findings for clear error and exercise plenary review over its legal conclusions. *See United States v. Tracey*, 597 F.3d 140, 146 (3d Cir. 2010). The same standard applies to a court's denial of a motion to dismiss. *See United States v. Bansal*, 663 F.3d 634, 651–52 (3d Cir. 2011).

## A

Jones first argues that her motion to suppress the heroin found in her purse should have been granted because the police did not actually discover the drugs in plain view. She claims that Detective Goob did not spot the heroin peeking out of the top of her change purse, but rather that Goob ordered her out of the car, opened her closed purse without her permission, and only then found the drugs. Jones's version of the facts is irreconcilable with Detective Goob's version of the facts. Finding that Jones was not credible, the District Court found as a matter of fact that Detective Goob spotted the heroin while standing outside the car. The District Court was entitled to make this judgment call and we cannot disturb it on appeal. *See United States v. Marcavage*, 609 F.3d 264, 281 (3d Cir. 2010) ("We ordinarily defer to a trial court's factual findings, particularly when they are predicated on credibility determinations."). We therefore must determine whether the District Court clearly erred when it found, based on the strength of

4

the officers' testimony, that Detective Goob saw the heroin in plain view. We find no error in the District Court's ruling, much less a clear one.

Jones does not challenge the lawfulness of the traffic stop. Therefore, in order for the warrantless seizure of heroin to have been constitutional under the plain view doctrine, the incriminating character of the evidence must have been "immediately apparent" to Detective Goob, and he must "have [had] a lawful right of access to the object itself." *See Horton v. California*, 496 U.S. 128, 136–37 (1990); *see also United States v. Yamba*, 506 F.3d 251, 256 (3d Cir. 2007) ("As the Supreme Court has said, precedent has 'come to reflect the rule that if, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately.'" (quoting *Texas v. Brown*, 460 U.S. 730, 739 (1983) (plurality opinion))).

All of the requirements of the plain view doctrine are met in this case. Goob testified that he "could see the heroin plain as day" in the change purse, App. 383, and that he recognized its distinctive packaging, App. 402–03, based on his prior experience, App. 327. Finally, Goob had a "lawful right of access" to the heroin in the change purse because it was in an open car and visible to the public. *See Horton*, 496 U.S. at 141.

In sum, because the District Court did not clearly err in finding that Detective Goob had credibly testified that he saw the heroin in plain view, its denial of Jones's motion to suppress was proper.

5

B

Jones next argues that the District Court erred when it found that she had consented to the officers' entry into and search of her home. This argument fails for the same reasons as her first argument, namely, because she seeks to relitigate on appeal the credibility determination that is the province of the trial court.[1]

Jones consented to the search of her home. After hearing her *Miranda* rights, Jones volunteered that she wanted the officers to remove the remaining heroin from her home before her son returned from school. Jones reiterated this desire during the journey back to her house and agreed to sign a consent-to-search form. Once officers entered Jones's house and realized they did not have a copy of the form, they waited until another officer arrived with a copy, which Jones promptly signed. Only then did officers accompany Jones upstairs to her bedroom, where they found the remaining heroin.

Jones complains that officers entered her house before she signed the consent-to-search form. But her verbal consent, offered several times following her arrest and the

_____

[1] Jones testified: that she never mentioned her son was coming home from school; that she did not make any statements about the presence of additional heroin in her home; that she refused to sign the consent-to-search form; and that she was unaware that there was additional heroin in the house. The District Court found her testimony "less than credible" and it was "seriously undermined" by her assertion that she did not know that there were 278 bricks of heroin in her bedroom dresser. Jones also argues that the testimony of her daughter—who generally corroborated Jones's version of the facts— indicates she did not consent to the search. However, the Court found that the daughter's testimony "lacked candor." Because Jones points to no objective evidence indicating that the Court was wrong in its decision to credit the officers' testimony regarding entry into and search of her home, we find no clear error. *See Marcavage*, 609 F.3d at 281.

issuance of *Miranda* warnings, was sufficient for the officers to enter her house. *See*

*United States v. Stabile*, 633 F.3d 219, 231 (3d Cir. 2011) (consent can be obtained

through "verbal and non-verbal actions"); *United States v. Price*, 558 F.3d 270, 279 (3d

Cir. 2009) (lack of consent form did not mean consent was involuntary). Because the

record supports the fact that Jones voluntarily consented to the officers' entry into and

search of her home, the District Court did not err in denying her motion to suppress.

C

Finally, Jones contends that the Police Department's destruction of evidence

warranted dismissal of the case as a denial of due process and a violation of Rule 16 of

the Federal Rules of Criminal Procedure or, in the alternative, suppression of the

evidence. We disagree.

Rule 16 states:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E). Jones argues that the Government's "intransigence"

regarding requests to turn over the heroin and the change purse before it was destroyed

warranted suppression of that evidence under the Federal Rules of Criminal Procedure.

*See* Fed. R. Crim. P. 16(d)(2) (if party fails to comply with Rule 16, District Court *may*

7

suppress the evidence). However, these sanctions are discretionary; "Rule[16] does not require a district court to do anything." *United States v. Lopez*, 271 F.3d 472, 484 (3d Cir. 2001).

Regardless, we need not even reach Rule 16(d)(2), because the record does not indicate that the Government failed to meet its Rule 16 obligations. On August 4, 2009, Jones served the Government with a written request to examine all "tangible objects" in the case. Later that day, the Government tendered its Rule 16 material to Jones and invited her to view all of the Government's physical evidence, including the heroin and the Louis Vuitton pursue. The evidence was destroyed June 12, 2010. There is no indication that Jones contacted the Government prior to October 2010 concerning the tangible objects of evidence.

Jones also argues that the failure of the police and county prosecutors to follow normal property destruction procedures and the Government's history of "intransigence" on Rule 16 matters demonstrated bad faith and thus constituted a denial of due process. "A defendant who claims destroyed evidence might have proved exculpatory if it could have been subjected to tests has to show the prosecution's bad faith in ordering or permitting its destruction." *United States v. Deaner*, 1 F.3d 192, 200 (3d Cir. 1993). "Without a showing of bad faith, failure to preserve evidence . . . is not a denial of due process." *Id.* (citing *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)). The Supreme Court has provided several examples of bad faith, such as "official animus towards

8

respondents or . . . a conscious effort to suppress exculpatory evidence," *California v. Trombetta*, 467 U.S. 479, 488 (1984), and "intentional[] delay[] to gain some tactical advantage," *Youngblood*, 488 U.S. at 57. The record does not indicate such conduct here, so we cannot find the District Court's ruling to be clearly erroneous.

As indicated above, Jones showed little if any interest in accessing the heroin or change purse until after she discovered it had been destroyed. Furthermore, the District Court's searching analysis of the record properly found no indication of animus toward Jones or an intent to hide evidence from her. The record indicates that the evidence was destroyed as part of a routine effort to improve air quality in the property room and without regard to any particular case, including Jones's. Before deciding to destroy the property in Jones's case, police and state prosecutors consulted the electronic docket for the Allegheny County Court of Common Pleas, which indicated that the case had been *nolle prossed*. They destroyed the evidence because they believed it was no longer needed for any case. Nothing in the record suggests that anyone involved in the destruction of the evidence knew it was relevant to a pending federal case. Accordingly, the District Court's finding that there was no bad faith here is well supported by the record.

III

For the reasons stated, we will affirm the District Court's judgment of conviction.

9