**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**FELIX SANTANA, Defendant**

Case Nos. SX-12-CR-085, SX-12-CR-086

Superior Court of the Virgin Islands

Division of St. Croix

July 8, 2014

[Page content redacted]

26

BRUCE MARSHACK, ESQ., Virgin Islands Department of Justice, Christiansted, St. Croix, USVI, *Attorney for the People.*

JOMO MEADE, ESQ., Law Office of Jomo Meade, Frederiksted, St. Croix, USVI, *Attorney for Defendant.*

MOLLOY, *Judge of the Superior Court*

## MEMORANDUM OPINION

(July 8, 2014)

**THIS MATTER** comes before the Court on Defendant's Motion to Suppress filed on February 10, 2014. The People of the Virgin Islands (the "People") filed an opposition on April 2, 2014. The Court held a suppression hearing on April 23, 2014. For the reasons stated below, the Court will grant Defendant's motion and suppress the evidence related to the search and seizure of the vehicle that took place on February 20, 2012.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of February 20, 2012, Virgin Islands Police Department (VIPD) Officer Egbert Thomas and his partner investigated an automobile collision near the Hovensa refinery on St. Croix. When he

arrived at the scene, Officer Thomas observed what appeared to be an accident in which a pickup truck went through a fence on Hovensa's property and came to a stop. The pickup truck's driver-side door was open and the driver of the vehicle, Defendant Felix Santana ("Santana"), was about 20-25 feet away from the truck and was accompanied by a VIPD officer. Officer Thomas testified that Santana appeared to be intoxicated because his speech was slurred and he smelled of alcohol. The officers then administered a field sobriety test on Santana which he failed. Santana was then arrested and placed in a police vehicle.

After the officers placed Santana in the police vehicle, Officer Thomas approached the pickup truck, looked through the open driver-side door, and observed a clear plastic bag containing smaller clear plastic bags filled with a white powdery substance on the floor of the driver side. Officer Thomas then called a forensic officer to the scene who performed a field test on the white substance which tested positive for cocaine.

On March 6, 2012, the People filed an Information charging Santana with possession of a controlled substance with intent to distribute in violation of 19 V.I.C. § 604(a)(1) and driving under the influence of an intoxicating liquor in violation of 20 V.I.C. § 493(a)(1). On February 10, 2014, Santana filed a motion to suppress, arguing that the bags containing the white powder were seized in violation of his Fourth and Fifth Amendment rights. The People filed a response on April 2, 2014, opposing the motion and arguing that the search fit into several categories of exceptions to the warrant requirement. The Court held a suppression hearing on April 23, 2014, at which time the People and Santana were provided the opportunity to present witnesses and submit arguments in support of their respective positions.

## II. LEGAL STANDARD

The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. U.S. CONST. amend. IV. To protect these rights, the Supreme Court has held that evidence obtained through unreasonable searches and seizures is excluded from use in criminal prosecutions. *Mapp v. Ohio,* 367 U.S. 643, 654-57, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). Reasonableness is an objective inquiry measured by examining the totality of the circumstances surrounding the search or seizure and the nature of the search or seizure itself. *United States v. Montoya de Hernandez,* 473 U.S. 531, 537, 105 S. Ct. 3304,

87 L. Ed. 2d 381 (1985); *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S. Ct. 417, 136 L. Ed. 2d 347 (1996). As a general rule, warrantless searches and seizures are presumptively unreasonable. *Horton v. California,* 496 U.S. 128, 133, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990). However, where the government's interest in effectuating a search or a seizure without a warrant outweighs the individual's privacy interest, courts have found limited exceptions to the warrant requirement. *Id.*; *see also Montoya de Hernandez,* 473 U.S. at 537-41.

■ Ordinarily, the burden of proof is on the defendant who seeks to suppress evidence. *United States v. Johnson,* 63 F.3d 242, 245 (3d Cir. 1995). That burden, however, shifts to the government to show that the search or seizure was reasonable once the defendant has established a basis for his motion, i.e. the search or seizure was conducted without a warrant. *Id.* It is undisputed that the police officers conducted a warrantless search of Santana's pickup truck and seized the cocaine. Accordingly, the People bear the burden of proof to demonstrate the actions of the police officers were reasonable under the Fourth Amendment.

## III. DISCUSSION

Santana argues that the warrantless search of his truck was unreasonable because there was no probable cause to believe the vehicle contained evidence of criminal activity. Santana also points to the fact that at the time of the search, he was under arrest and that the truck was not under his immediate control. Consequently, Santana argues that the search was unreasonable because there was no risk to the officers or risk of destructible evidence.

The People argue that the warrantless search was reasonable under both the plain view doctrine and as a search incident to a lawful arrest. The People also argue that even if the search and seizure was unreasonable, the evidence should still be admitted under the inevitable discovery doctrine. The Court will address each of these arguments below.

### *A. The Plain View Exception is Not Applicable.*

■ Under the plain view doctrine, it is reasonable for law enforcement to seize evidence in plain view without a warrant provided: 1) the officer is lawfully in the place from which the evidence is in plain view and has

lawful right of access to the object itself; and 2) the incriminating character of the evidence is immediately apparent. *Horton v. California,* 496 U.S. at 136-37. "The plain-view doctrine is grounded on the proposition that once police are lawfully in a position to observe an item firsthand, its owner's privacy interest in that item is lost." *Illinois v. Andreas,* 463 U.S. 765, 771, 103 S. Ct. 3319, 77 L. Ed. 2d 1003 (1983). Absent probable cause, however, the officer cannot manipulate or disturb the object in order to discover its incriminating character. *Arizona v. Hicks,* 480 U.S. 321, 326-29, 107 S. Ct. 1149, 94 L. Ed. 2d 347.

The evidence introduced by the People clearly established that Officer Thomas was in a lawful vantage point when he observed the clear plastic bags containing white powder on the floor near the driver-side seat. Officer Thomas testified he approached the vehicle and that the driver's side door was open. He was on a public street and conducting an investigation. He was outside of the vehicle and looking in when he saw the white powdery substance. Thus, the Court finds that Officer Thomas was in a lawful position at the time he looked into the vehicle.

With regard to the second element, "a plain view seizure is justified only if the 'incriminating character' of the item sought to be seized is 'immediately apparent' at the moment preceding the seizure." *United States v. Benish,* 5 F.3d 20, 25 (3d Cir. 1993) (citing *Texas v. Brown,* 460 U.S. 730, 741, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983)). This requirement does not mean "that the officer must be possessed of near certainty as to the seizable nature of the items." *Texas v. Brown,* 460 U.S. at 741. Rather, it means that in order for law enforcement to seize an object under the plain view doctrine, there must be probable cause to believe an object in plain view is contraband. *Minnesota v. Dickerson,* 508 U.S. 366, 375, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993); *see also United States v. Scarfo,* 685 F.2d 842, 854 (3d Cir. 1982) ("[a]n article need not be inherently incriminating; the incriminating nature of an object is generally deemed apparent where police have probable cause to believe it is evidence of a crime."). "[P]robable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' that certain items may be contraband or stolen property or useful as evidence of a crime." *Texas v. Brown,* 460 U.S. at 742 (quoting *Carroll v. United States,* 267 U.S. 132, 162, 45 S. Ct. 280, 69 L. Ed. 543, T.D. 3686 (1925)).

In *Brown,* the government satisfied its burden by presenting the testimony of an officer who, while conducting a routine driver's license check point, observed in plain view in Brown's car an opaque, green party balloon filled with a substance and knotted one half-inch from the tip. *Id.* at 733-34. The officer testified, based on his experience in narcotic arrests and his conversations with other officers, the balloons tied in such a manner are often used to carry narcotics. *Id.* at 742. The government also presented the testimony of a police department chemist who testified "that it was 'common' for balloons to be used in packaging narcotics." *Id.* at 743. The court stated "[t]he fact that [the Officer] could not see through the opaque fabric of the balloon is all but irrelevant: the distinctive character of the balloon itself spoke volumes as to its contents-particularly to the trained eye of the officer." *Id.* Despite the fact that the balloon was opaque, its incriminating nature was immediately apparent to the officer.

In contrast, in *United States v. Wilson,* 36 F.3d 1298 (5th Cir. 1994), the Fifth Circuit Court of Appeals found that the incriminating nature of a checkbook was not immediately apparent *Id.* at 1306. In that case, the checkbook cover obscured the names on the checks. *Id.* The officer opened the checkbook and called the person whose name was on the checks. *Id.* at 1301. It was only then that the officer was able to verify the checks were stolen. *Id.* The court reasoned that at the time of seizure the incriminating nature of the checks was not immediately apparent because the officer had to make a telephone call to verify that the checks were stolen. *Id.* at 1306.

Here, the People failed to introduce evidence at the suppression hearing that the incriminating character of the white powdery substance was immediately apparent to Officer Thomas. Officer Thomas merely testified that he observed a plastic bag containing another plastic bag containing a white powdery substance on the floor of Santana's pickup truck. There was no testimony that based on Officer Thomas' experience, knowledge, or training that the items he observed appeared to be illicit drugs. For instance, there was no testimony that the cocaine was in a distinctive package or that Officer Thomas recognized the item to be cocaine. *See e.g., United States v. Benish,* 5 F.3d 20, 25 (3d Cir. 1993) (finding sufficient evidence that marijuana seized by officers satisfied "immediately apparent" requirement where officer testified he knew the item was a marijuana plant because "[w]e have free time we have classes

and things on marijuana, paraphernalia recognitions. Just from school and criminology classes."); *United States v. Jones,* 503 Fed. Appx. 174, 177 (3d Cir. 2012) (finding sufficient evidence that heroin seized satisfied "immediately apparent" requirement where officer testified that "he could see the heroin plain as day" and that he recognized its distinctive packaging based on his prior experience). Officer Thomas did not present any facts that would establish probable cause to believe that the white powdery substance was illegal narcotics. Thus, the Court finds that the People failed to provide sufficient evidence to conclude that the cocaine seized in the plastic bags satisfied the "immediate apparent" requirement under the plain view doctrine.

The People argued the police had to have been aware of the incriminating nature of the evidence because they called a forensic technician to test the powder. Thus, according to the People, the Court can draw the inference that because Officer Thomas called a forensic technician to the scene to test the white powdery substance, this demonstrates that the incriminating character of the substance was immediately apparent to Officer Thomas. The Court disagrees. The absence of any testimony providing probable cause to believe that the white powdery substance was illegal contraband coupled with the fact that Officer Thomas had to call a forensics officer to test the substance is more indicative that Officer Thomas was unsure that the substance was an illicit drug and therefore the incriminating nature was not immediately apparent. It was only after Officer Thomas called a forensics technician to the scene and determined that the white powder was cocaine that the officers were able to verify that the powder was an illegal substance. Prior to these acts, there was no evidence that the incriminating nature of the plastic bags containing a white powder was immediately apparent. *See e.g., United States v. Szymkowiak,* 727 F.2d 95, 99 (6th Cir. 1984) (opining that the incriminating nature of the weapon was not immediately apparent where officer who saw gun in plain view had to call in serial numbers to determine whether possession of the gun was illegal). Therefore, the Court rejects the People's argument that the calling of a forensics technician to verify that the item was an illicit drug is evidence that the incriminating nature of the item was immediately apparent. Accordingly, the People did not meet their burden of demonstrating that this search was reasonable under the plain view doctrine.

## B. The Search Incident to a Lawful Arrest Exception is Not Applicable.

The People also argue that the search and seizure was reasonable as a valid search incident to a lawful arrest. Under the search incident to a lawful arrest exception to the warrant requirement, it is reasonable for a police officer to search "the arrestee's person and the area 'within his immediate control' " to remove weapons that might endanger officer safety and to prevent the concealment or destruction of evidence. *Chimel v. California,* 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969). A warrantless search beyond the arrestee's person or area within his immediate control exceeds the scope of the exception and is unreasonable. *Id.* at 768.

When a police officer "has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton,* 453 U.S. 454, 460, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981). However, this "does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle." *Arizona v. Gant,* 556 U.S. 332, 335, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). In *Arizona v. Gant,* the "[Supreme] Court adopted a new, two-part rule under which an automobile search incident to a recent occupant's arrest is constitutional: (1) if the arrestee is within reaching distance of the vehicle during the search, or (2) if the police have reason to believe that the vehicle contains 'evidence relevant to the crime of arrest.' " *Davis v. United States,* 564 U.S. 229, 131 S.Ct. 2419, 2425, 180 L. Ed. 2d 285 (2011).

Here, Santana was under arrest and in the back of a police vehicle at the time the search was conducted. He was approximately 20-25 feet away from the vehicle, and therefore was not within reaching distance of the truck and would not have been able to grab a weapon or destroy evidence. The facts of this case fail the first prong of the *Gant* test. As to the second prong, the People did not introduce any testimony at the suppression hearing that the search was performed because the police believed the vehicle contained evidence related to the driving under the influence offense. It is the People's burden to demonstrate that a warrantless search was reasonable. Therefore, the Court holds that the People failed to demonstrate that the search incident to arrest doctrine applies to the facts of this case.

### C. *The People Did Not Prove by a Preponderance of the Evidence that the Contraband Would Have Been Inevitably Discovered Through Routine Police Procedures.*

Typically, unlawfully obtained evidence is excluded as "fruit of the poisonous tree" in order to "deter police from violations of constitutional and statutory protections." *Nix v. Williams,* 467 U.S. 431, 442-43, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984). However, "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received." *Id.* at 444. The prosecution can meet its burden "if the [prosecution] establishes that the police, following routine procedures, would inevitably have uncovered the evidence." *United States v. Vasquez De Reyes,* 149 F.3d 192, 195 (3d Cir. 1998). Essentially, the prosecution must show a chain of events that would have led to the discovery of the evidence without the intervening illegality. "[T]he analysis should focus upon the historical facts capable of ready verification, and not speculation." *Id.* (citing *Nix,* 467 U.S. at 444, n. 5).

The People argue that, even if the warrantless search was illegal, the seized evidence should not be suppressed because it would have been inevitably discovered during an "inventory search" of Santana's pickup truck after the vehicle was impounded. An inventory search is a reasonable warrantless search carried out under standardized procedures to itemize property taken into police custody. *South Dakota v. Opperman,* 428 U.S. 364, 371-76, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976). The purposes served by inventory searches are to: 1) protect the owner's property while in police custody; 2) protect the police against claims of lost or stolen property; and 3) protect the police from potential dangers. *Colorado v. Bertine,* 479 U.S. 367, 372, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987). "The policy or practice governing inventory searches should be designed to produce an inventory." *Florida v. Wells,* 495 U.S. 1, 4, 110 S. Ct. 1632, 109 L. Ed. 2d 1 (1990). Under those procedures, "[t]he individual police officer must not be allowed so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime.' " *Id.* (quoting *Bertine,* 479 U.S. at 376). "[I]n order for criteria regulating inventory searches to be sufficiently 'standardized' under the Fourth Amendment, '[t]he criteria or routine must limit an officer's discretion in two ways: first, as to whether to search . . . , and second, as

to the scope of [the] search.' " *United States v. Matthews,* 532 Fed. Appx. 211, 219 (3d Cir. 2013) (quoting *United States v. Mundy,* 621 F.3d 283, 288 (3d Cir. 2010)). "[T]he Government must do more than establish the possibility that the evidence would have been discovered. Rather, the record must support a finding that the police had relevant procedures in place, that those procedures would have been followed, and that would have inevitably led to the discovery of the evidence in question." *United States v. Carrion-Soto,* 493 Fed. Appx. 340, 343 (3d Cir. 2012).

Officer Thomas testified the Virgin Islands Police Department has an inventory search procedure that it follows when cars are towed to a police impoundment lot. The purpose of the inventory search, according to Officer Thomas, is accountability. The search protects the owner's property while in custody and protects the department from claims of lost or stolen property. The People elicited testimony that every impounded vehicle is inventoried under the procedure followed by the Virgin Islands Police Department This testimony satisfied the "whether to search" criteria. The People, however, failed to make any showing as to the "scope of searches" authorized under the procedure followed by the Virgin Islands Police Department. They did not produce a written policy nor did they elicit testimony as to the routine typically followed by officers when performing an inventory search. Noting that an inventory procedure exists is not the same as establishing that an inventory procedure exists that is sufficiently standardized as to be lawful under the Fourth Amendment. Absent proof that inventory procedures are sufficiently standardized to be reasonable under the Fourth Amendment, the Court is left to speculate as to whether such discovery would have come about through lawful means.

In addition, the People have failed demonstrate that the VIPD's standardized procedures for a vehicle inventory search was followed. The record in this case is devoid of any evidence that the vehicle was towed or impounded. In fact, Officer Thomas testified on cross-examination that he could not recall whether Santana's sister was at the scene at the time of the incident or whether she drove away with Santana's vehicle. Surely, if the vehicle was towed or impounded, it would have been impossible for Santana's sister to drive away with the vehicle. Accordingly, the Court finds that the People have not established by a preponderance of the evidence that the unlawfully seized items would have been inevitably

discovered through a chain of events which would have led to a valid inventory search. *See United States v. Carrion-Soto,* 493 Fed. Appx. 340, 343 (3d Cir. 2012) (finding insufficient evidence that law enforcement had standardized procedures in place to warrant application of inevitable discovery doctrine "because nothing on this record even suggests that the car was impounded . . .").

## IV. CONCLUSION

In sum, the Court concludes the People have failed to meet their burden to demonstrate that the warrantless search of Santana's vehicle fit into one of the exceptions to the warrant requirement. Accordingly, the Court will grant Santana's motion and suppress the contents of the evidence seized in this case. An appropriate Order follows.